UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x

NYKCOOL A.B.,                                              :

        Plaintiff,                                  :

        -against-                                   :     12 Civ. 5754 (LAK) (AJP)

PACIFIC INTERNATIONAL SERVICES, INC.;       :     **REPORT AND RECOMMENDATION**
PAN AMERICAN TRADING COMPANY, INC.;
FRUIT IMPORTERS AMERICAS, INC.; PACIFIC     :
GROUP HOLDING, INC.; ECUADORIAN LINE,
INC.; SOUTH PACIFIC SHIPPING CO. LTD.;      :
ALVARO FERNANDO NOBOA PONTON;
CARLOS AGUIRRE; CARLOS AHLSTROM;            :
EDWARD HICKEY & ROBERT KISSINGER,
                                             :
        Defendants,
                                             :
        -and-
                                             :
PACIFIC FRUIT INC. & KELSO ENTERPRISES
LTD.,                                        :

        Defendants-in-Interest.               :

------------------------------------- x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Lewis A. Kaplan, United States District Judge:**

        Plaintiff NYKCool A.B. brings this action to recover on the judgment entered by this Court (enforcing a maritime arbitration award) against Pacific Fruit and Kelso Enterprises, by suing companies and officers/directors that NYKCool contends are alter egos of Pacific/Kelso or subject to piercing the corporate veil.  (See generally Dkt. No. 1: Compl.)  The facts underlying this dispute are set forth in the Court's prior decisions, familiarity with which is assumed.  See NYKCool A.B.

v. Pac. Fruit, Inc., 10 Civ. 3867, 2012 WL 1255019 (S.D.N.Y. Apr. 16, 2012) (Peck, M.J.); NYKCool A.B. v. Pac. Fruit, Inc., 10 Civ. 3867, 2010 WL 4812975 (S.D.N.Y. Nov. 24, 2010) (Peck, M.J.); NYKCool A.B. v. Pac. Fruit, Inc., 10 Civ. 3867, 2011 WL 3666579 (S.D.N.Y. Aug. 9, 2011) (Peck, M.J.).

Presently before the Court is defendants' motion to dismiss NYKCool's fourth cause of action. (Dkt. No. 16: Notice of Motion.) The fourth cause of action asserts a RICO claim for transfer of money from Pacific Fruit and Kelso rendering them judgment proof. (Compl. ¶¶ 87-95.) For the reasons set forth below, defendants' motion to dismiss should be GRANTED in part, and DENIED in part.

**FACTS**

The facts alleged in NYKCool's complaint are assumed to be true for purposes of this motion, and will be set forth herein without use of the preamble "NYKCool alleges."

**The Parties**

Plaintiff NYKCool, a "foreign entity engaged in the business of maritime transportation for hire," holds an unsatisfied judgment from this Court against Pacific and Kelso for $8,787,157. (Dkt. No. 1: Compl. ¶¶ 9-10, 13.)

Defendant Alvaro Fernando Noboa Ponton ("Noboa") "controls the defendant and defendants in interest corporations . . . in the business of growing, transportation and sale of fresh fruit." (Compl. ¶ 22.) Defendant companies Pacific International Services, Inc. ("PISI"), Pan American Trading Company, Inc. ("PAT"), Fruit Importers Americas, Inc. ("FIA"), Pacific Group Holding, Inc. ("PGH"), Ecuadorian Line, Inc. ("EL"), and South Pacific Shipping Co. Ltd. ("SPSC"),

3

and defendants-in-interest Pacific and Kelso, have "no separate, independent identities from each other." (Compl. ¶¶ 14-18, 20, 28-29, 32-33.) The defendant companies are subsidiaries (directly or indirectly) of PGH. (Compl. ¶ 30; Dkt. No. 34: Ans. ¶ 21.) The defendant companies share the same officers including President Carlos Aguirre, Treasurer Edward Hickey and Secretary Carlos Ahlstrom. (Compl. ¶ 36; Ans. ¶ 23.)

The defendant companies are interconnected, do business as one another and "pay each other's debts and obligations." (Compl. ¶¶ 14-20, 31.) Defendant SPSC does business as EL "when it deems it advantageous to do so." (Compl. ¶¶ 20, 69.) Aguirre testified[1] that EL is an agent for SPSC, EL is sometimes a trade name or d/b/a name for SPSC, and is used on bills of lading. (Compl. ¶ 69.) Additionally, Aguirre has sworn that SPSC "'operates vessels . . . and carries Pacific Fruit's perishable cargoes to the port of New York in a regular weekly service.'" (Compl. ¶ 21.) At the arbitration, "[w]itnesses who testified on behalf of Kelso and Pacific Fruit . . . were employed by" EL. (Compl. ¶ 19.) Since April 1, 2011, FIA conducts all of Pacific's former business and employs all of Pacific's former employees. (Compl. ¶¶ 45, 47.) Bookkeeper Santoro testified that "'the companies are all related,'" "'all intercompanied,'" and "'comingle funds and share funds as needed.'" (Compl. ¶ 65.)

---

[1] NYKCool obtained some post judgment discovery in the underlying action. See NYKCool A.B. v. Pac. Fruit, Inc., 10 Civ. 3867, 2012 WL 1255019 at *3 (S.D.N.Y. Apr. 16, 2012) (Peck, M.J.).

4

**Mail and Wire Transfers of Funds from Pacific to PISI, PAT, and EL**

On or about April 28, 2010, the arbitrators issued the Arbitration Award in favor of NYKCool against Pacific and Kelso. (Dkt. No. 1: Compl. ¶ 8.) Hickey testified that PISI and PAT "received, without consideration, funds belonging to Pacific Fruit in an amount no less than $2,600,000.00 at or about the time the Award was issued." (Compl. ¶ 40; Dkt. No. 34: Ans. ¶ 27.) Hickey also testified that Pacific transferred $600,000 to PISI "on or about the date of the Award in arbitration was issued, April 28, 2010." (Compl. ¶ 42; Ans. ¶ 29.) Aguirre testified that on or about April 2010, "without his authority or any present recollection of being advised," Hickey, acting under the direction of Ahlstrom, authorized $2,000,000 of Pacific's funds to be transferred to PAT. (Compl. ¶ 41.) Aguirre also testified that at the time of the transfer, PAT had "no salaried employees" and was "'mostly dormant.'" (Compl. ¶¶ 41, 66.)

On or about September 7, 2011, Judge Kaplan entered judgment for NYKCool confirming the Arbitral Award in the amount of $8,787,157 plus interest. (Compl. ¶ 9; 10 Civ. 3867, Dkt. No. 46: 9/7/11 Order.) In 2011, Pacific made additional transfers of around $18,000,000 to PAT and PISI. (Compl. ¶ 55.) Bookkeeper Santoro testified that in 2011, millions of dollars moved from Pacific to PAT. (Compl. ¶ 61.) Defendants' Comptroller M. Aracho testified:

> Q. Could there be any legitimate reason for this change of corporate structure and monies?
>
> A. Not to my knowledge . . .
>
> Q. Well, if you have a company that's making lots of money and receiving lots of money and owes a lot of money and all of a sudden it's paying out all this money to a company that has nothing to do with its business and it's closing down, doesn't it strike you to (sic) as making a detriment its creditors? . . .

> A. Did it strike me as odd? Yes, I questioned it and was given the answer that orders were given, instructions were passed on and that's what we had to do.

(Compl. ¶ 57, quotations omitted.) Comptroller Aracho testified that on March 21, 2011, Hickey authorized $930,000 to be transferred from Pacific to PISI. (Compl. ¶ 60.) Comptroller Aracho also confirmed the following transfers from Pacific to PAT: a May 2011 transfer of $1,520,734, a June 2011 transfer of $195,000, an August 2011 transfer of $80,000, a September 2011 transfer of $103,000, and an October 2011 transfer of $22,000. (Compl. ¶ 57.) Comptroller Aracho also confirmed that PAT does no business today, has no employees, has no money in its account, and has never repaid Pacific. (Compl. ¶ 57.) Pacific also transferred funds to EL a/k/a SPSC. (Compl. ¶¶ 64, 67.)[2/]

**Mail and Wire Transfers of Funds from Pacific to FIA**

On March 21, 2011, the date of Judge Kaplan's first order, the direction to close Pacific and transfer its business to FIA was made. (Dkt. No. 1: Compl. ¶ 46; 10 Civ. 3867, Dkt. No. 26: 3/21/11 Order at 1.) Pacific was the exclusive marketer of "'Bonita'" bananas in North America for forty years until the transfer to FIA. (Compl. ¶ 50; Dkt. No. 34: Ans. ¶ 34.) Aguirre, President of both Pacific and FIA, testified that Pacific's sixty million dollar business was given to FIA for no consideration. (Compl. ¶ 48; Ans. ¶ 34.) Aguirre and Hickey have no explanation for the transfer of assets. (Compl. ¶ 53.) Additionally, Aguirre alleges that he played no role in the decision, and that Kissinger instructed Hickey to make the transfer. (Compl. ¶ 51.) Aguirre testified that he does

---

[2/] The various wire and mail transfers were made in New York, involving Citibank accounts bearing the numbers: 26515564, 30463065, 3043102, 30463137, and 30463188. (Compl. ¶ 72.) NYKCool argues that these account numbers "were and continue to be used on a regular basis as an ongoing enterprise among the defendants." (Compl. ¶ 72.)

6

not know Kissinger's position or authority, but has seen him use the corporate offices shared by defendants at 60 Park Place in Newark.  (Compl. ¶ 52.)  Since April 1, 2011, FIA has conducted all of Pacific's former business and employed all of Pacific's former employees.  (Compl. ¶¶ 45, 47; Ans. ¶ 34.)

Today, Pacific has no assets and does no business.  (Compl. ¶ 55.)

**The Complaint's Causes of Action and Defendants' Motion to Dismiss**

The complaint alleges five causes of action.  (Dkt. No. 1: Compl. ¶¶ 75-109.)  The first cause of action seeks to pierce the "corporate veil," such that Noboa "and the defendant companies should be found to be 'successors-in-interest' to Pacific," and Noboa and the defendant companies "should be adjudged to be mere 'alter-egos' and thus one-and-the-same for all purposes, including, inter alia, liability for the [underlying] judgment."  (Compl. ¶ 77.)  The second cause of action seeks to set aside the transfers made by Pacific to the other defendant companies "as fraudulent [conveyances] and made available for execution and/or satisfaction of the [underlying] judgment."  (Compl. ¶ 81.)  The third cause of action seeks "reasonable attorney's fees" pursuant to N.Y. Debtor and Creditor Law § 276-a.  (Compl. ¶¶ 83-86.)  The fifth cause of action alleges that individual defendants Aguirre, Ahlstrom and Hickey are liable pursuant to N.Y. Business Corporation Law § 720 for breach of "fiduciary direct and derivative duties to NYKCool, as judgment creditor by improperly and/or fraudulently diverting, misappropriating, and wasting corporate assets."  (Compl. ¶¶ 96-99.)

The fourth cause of action – the subject of defendants' motion – asserts a claim for mail and wire fraud under RICO.  (Compl. ¶¶ 87-95.)  Specifically, NYKCool alleges that the

defendants acting "as a part of a racketeering enterprise conspired to assist in the fraud upon NYKCool through the use of wire and U.S. mail activities" to aid Pacific and Noboa "in avoiding their lawful debt" to NYKCool. (Compl. ¶ 90.) NYKCool alleges that the RICO activities "caused injury to NYKCool as it has been unable to satisfy the [Arbitral] Award or judgment thereon." (Compl. ¶ 92; see Compl. ¶ 93.) NYKCool also seeks attorneys' fees in connection with the RICO claim. (Compl. Wherefore ¶¶ i, v; see Dkt. No. 22: NYKCool Opp. Br. at 12.)

On August 20, 2012, defendants moved to dismiss only NYKCool's fourth (RICO) cause of action for failing to state a claim because the "damages are speculative and unprovable," and also arguing that the RICO claim fails to allege fraud with particularity as required by Rule 9, Fed. R. Civ. P. (See Dkt. No. 16: Notice of Motion; Dkt. No. 17: Defs. Br. at 4; Dkt. No. 27: Defs. Reply Br.)

## ANALYSIS

### I. THE STANDARDS GOVERNING A MOTION TO DISMISS

In two decisions in 2007 and 2009, the Supreme Court significantly clarified the standard for a motion to dismiss, as follows:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Twombly, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the

8

court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 677-79, 129 S. Ct. 1937, 1949-50 (2009) (citations omitted & emphasis added) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-57, 570, 127 S. Ct. 1955, 1965-66, 1974 (2007) (retiring the Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957), pleading standard that required denying a Rule 12(b)(6) motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")).[3]

---

[3]     Accord, e.g., Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010), cert. denied, 131 S. Ct. 901 (2011); Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009); Jones v.
(continued...)

9

Even after <u>Twombly</u> and <u>Iqbal</u>, the Court's role in deciding a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  <u>Bison Capital Corp.</u> v. <u>ATP Oil & Gas Corp.</u>, 10 Civ. 0714, 2010 WL 2697121 at *5 (S.D.N.Y. June 24, 2010) (Peck, M.J.) (quotations omitted), <u>report & rec. adopted</u>, 2010 WL 3733927 (S.D.N.Y. Sept. 16, 2010).[4/]

## II.    APPLICABLE LAW GOVERNING A RICO CAUSE OF ACTION

"RICO is a broadly worded statute" that "should be read broadly in light of Congress' self-consciously expansive language and overall approach in crafting RICO and Congress's express admonition that RICO is to be liberally construed to effectuate its remedial purposes."  <u>Attorney Gen. of Canada</u> v. <u>R.J. Reynolds Tobacco Holdings, Inc.</u>, 268 F.3d 103, 107 (2d Cir. 2001), <u>cert. denied</u>, 537 U.S. 1000, 123 S. Ct. 513 (2002); <u>United States</u> v. <u>Sasso</u>, 215 F.3d 283, 289-90 (2d Cir.

---

[3/]   (...continued)
<u>N.Y. Dep't of Corr. (DOC) Jail</u>, 11 Civ. 4477, 2011 WL 5865143 at *1-2 (S.D.N.Y. Nov. 22, 2011) (Peck, M.J.), <u>report & rec. adopted</u>, 2012 WL 1232963 (S.D.N.Y. Apr. 12, 2012); <u>Lindner</u> v. <u>IBM Corp.</u>, 06 Civ. 4751, 2008 WL 2461934 at *3 (S.D.N.Y. June 18, 2008); <u>Joseph</u> v. <u>Terrence Cardinal Cooke Health Care Ctr.</u>, 07 Civ. 9325, 2008 WL 892508 at *1 (S.D.N.Y. Apr. 2, 2008); <u>Elektra Entm't Grp., Inc.</u> v. <u>Barker</u>, 551 F. Supp. 2d 234, 237 (S.D.N.Y. 2008); <u>Edison Fund</u> v. <u>Cogent Inv. Strategies Fund, Ltd.</u>, 551 F. Supp. 2d 210, 216-17 (S.D.N.Y. 2008); <u>Diana Allen Life Ins. Trust</u> v. <u>BP P.L.C.</u>, 06 Civ. 14209, 2008 WL 878190 at *3 (S.D.N.Y. Mar. 31, 2008).

[4/]   <u>Accord, e.g.</u>, <u>Tasini</u> v. <u>AOL, Inc.</u>, 11 Civ. 2472, --- F. Supp. 2d ----, 2012 WL 1066893 at *1 (S.D.N.Y. Mar. 30, 2012) ("The Court's function on a motion to dismiss is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'"); <u>Saunders</u> v. <u>Coughlin</u>, 92 Civ. 4289, 1994 WL 88108 at *2 (S.D.N.Y. Mar. 15, 1994) (quoting <u>Geisler</u> v. <u>Petrocelli</u>, 616 F.2d 636, 639 (2d Cir. 1980)).

10

2000) (quotations omitted).[5]  Pursuant to 18 U.S.C. § 1962, "a person commits a RICO violation when he (a) invests income derived from a 'pattern of racketeering' in an 'enterprise'; or (b) controls an 'enterprise' through a 'pattern of racketeering activity'; or (c) participates in an 'enterprise' through a 'pattern of racketeering activity'; or (d) conspires to violate subsection (a), (b) or (c)."  Bankers Trust Co. v. Rhoades, 859 F.2d at 1102 (citing 18 U.S.C. § 1962(a)-(d)).[6]

"To state a claim for damages under RICO a plaintiff has two pleading burdens." Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983), cert. denied, 465 U.S. 1025, 104 S. Ct. 1280 (1984).[7]  First, the plaintiff must allege that the defendant has violated "the substantive RICO

---

[5]  See, e.g., Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1100 (2d Cir. 1988), cert. denied, 490 U.S. 1007, 109 S. Ct. 1642, 1643 (1989).

[6]  See, e.g., Lutin v. N.J. Steel Corp., No. 96-9664, 122 F.3d 1056 (table), 1997 WL 447005 at *5 (2d Cir. Aug. 7, 1997); GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 465 (2d Cir. 1995), cert. denied, 518 U.S. 1017, 116 S. Ct. 2547 (1996); Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 23 n.1 (2d Cir. 1990); see also, e.g., Combier v. New York, 09 Civ. 5314, 2010 WL 3785130 at *16 (S.D.N.Y. Aug. 25, 2010), report & rec adopted, 2010 WL 3835030 (S.D.N.Y. Oct. 1, 2010); Freund v. Lerner, 09 Civ. 7117, 2010 WL 3156037 at *6 (S.D.N.Y. Aug. 10, 2010); Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. Ltd., 205 F. Supp. 2d 243, 247 (S.D.N.Y. 2002); Allen v. New World Coffee, Inc., 00 Civ. 2610, 2001 WL 293683 at *5 (S.D.N.Y. Mar. 27, 2001).

[7]  See, e.g., Town of W. Hartford v. Operation Rescue, 915 F.2d 92, 100 (2d Cir. 1990); Ammirato v. Duraclean Int'l, Inc., 687 F. Supp. 2d 210, 222 (E.D.N.Y. 2010); Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C., No. 05-5934, 2009 WL 3245388 at *3 (E.D.N.Y. Sept. 30, 2009); Greene v. Hanover Direct, Inc., 06 Civ. 13308, 2007 WL 4224372 at *4 (S.D.N.Y. Nov. 19, 2007), aff'd, 326 F. App'x 57 (2d Cir.), cert. denied, 130 S. Ct. 557 (2009); Weizmann Inst. of Sci. v. Neschis, 421 F. Supp. 2d 654, 686 (S.D.N.Y. 2005); Williams v. Dow Chem. Co., 255 F. Supp. 2d 219, 225 (S.D.N.Y. 2003); Kades v. Organic Inc., 00 Civ. 3671, 2003 WL 470331 at *8 (S.D.N.Y. Feb. 24, 2003); Casio Computer Co. v. Sayo, 98 Civ. 3772, 2000 WL 1877516 at *10 (S.D.N.Y. Oct. 13, 2000).

11

statute . . . commonly known as 'criminal RICO.'"  Moss v. Morgan Stanley, Inc., 719 F.2d at 17.

To meet this burden the plaintiff must allege the following seven elements:

> (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce.

Moss v. Morgan Stanley Inc., 719 F.2d at 17.[8/]  Second, a plaintiff must allege "injury to business or property; and . . . causation of the injury by the violation."  Hecht v. Commerce Clearing House, Inc., 897 F.2d at 23.[9/]

---

[8/]     Accord, e.g., Town of W. Hartford v. Operation Rescue, 915 F.2d at 100; Ammirato v. Duraclean Int'l, Inc., 687 F. Supp. 2d at 222; Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C., 2009 WL 3245388 at *3; RxUSA Wholesale, Inc. v. Alcon Labs., Inc., 661 F. Supp. 2d 218, 244 (E.D.N.Y. 2009), aff'd, 391 F. App'x 59 (2d Cir. 2010); Ritter v. Klisivitch, No. 06-CV-5511, 2008 WL 2967627 at *4 (E.D.N.Y. July 30, 2008); Greene v. Hanover Direct, Inc., 2007 WL 4224372 at *4; Bell v. Hubbert, 95 Civ. 10456, 2007 WL 60513 at *4 (S.D.N.Y. Jan. 8, 2007); Kirk v. Heppt, 423 F. Supp. 2d 147, 150 (S.D.N.Y. 2006); Sheridan v. Jaffe, 94 Civ. 9344, 1996 WL 345965 at *5 (S.D.N.Y. June 24, 1996) (Peck, M.J.); see also cases cited in fn.7 above.

[9/]     Accord, e.g., Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008); Motorola Credit Corp. v. Uzan, 322 F.3d 130, 135 (2d Cir. 2003); DeFalco v. Bernas, 244 F.3d 286, 305 (2d Cir. 2001); Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp., 101 F.3d 900, 904 (2d Cir. 1996); First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 767 (2d Cir. 1994), cert. denied, 513 U.S. 1079, 115 S. Ct. 728 (1995); Town of W. Hartford v. Operation Rescue, 915 F.2d at 100 ("The plaintiff's second pleading burden is to allege that he was injured in his business or property by reason of a violation of section 1962." (quotations omitted)); First Cent. Sav. Bank v. Meridian Residential Capital, No. 09-CV-3444, 2011 WL 838910 at *2 (E.D.N.Y. Mar. 3, 2011); Ammirato v. Duraclean Int'l, Inc., 687 F. Supp. 2d at 222; Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C., 2009 WL 3245388 at *4; Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital Mkts., LLC, 07 Civ. 8139, 2008 WL 3925175 at *4 (S.D.N.Y. Aug. 26, 2008) (Chin, D.J.), aff'd, 347 F. App'x 711 (2d Cir. 2009); World Wrestling Entm't, Inc. v. Jakks Pac., Inc., 530 F. Supp. 2d 486, 518 (S.D.N.Y. 2007), aff'd, 328 F. App'x 695 (2d Cir. 2009); City of N.Y. v. Cyco.Net, Inc., 383 F. Supp. 2d 526, 546 (S.D.N.Y. 2005).

12

"A RICO plaintiff 'only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.'" First Nationwide Bank v. Gelt Funding Corp., 27 F.3d at 768 (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S. Ct. 3275, 3285 (1985)).[10/]

### III. DEFENDANTS' MOTION TO DISMISS NYKCOOL'S RICO CLAIM SHOULD BE GRANTED IN PART AND DENIED IN PART

Defendants' challenge to NYKCool's RICO cause of action is to the issue of loss causation. Defendants argue that

> the essence of plaintiff's claim in the Fourth Cause of Action is that it suffered loss of a legitimate debt by virtue of the fact that the judgment debtors [Pacific and Kelso] have been rendered insolvent. Yet, in the remaining causes of action, plaintiff seeks to collect the "lost debt" from the defendants on various theories . . . .
>
> Where, as here, the RICO injury alleged by plaintiff is the loss of a legitimate debt, and that debt is also the subject of on-going recovery proceedings, there has been no loss of a legitimate debt and RICO damages are "unrecoverable" because their accrual is "speculative" and "their amount and nature unprovable."

(Dkt. No. 17: Defs. Br. at 5, quoting Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1104 (2d Cir. 1988), cert. denied, 490 U.S. 1007, 109 S. Ct. 1642, 1643 (1989).)

"[A]s a general rule, a cause of action does not accrue under RICO until the amount

---

[10/] See, e.g., Denney v. Deutsche Bank AG, 443 F.3d 253, 266 (2d Cir. 2006); Hollander v. Flash Dancers Topless Club, 173 F. App'x 15, 17 (2d Cir. 2006); RxUSA Wholesale, Inc. v. Alcon Labs., Inc., 661 F. Supp. 2d at 244-45; Gristede's Foods, Inc. v. Unkechauge Nation, 532 F. Supp. 2d 439, 444 (E.D.N.Y. 2007); Ello v. Singh, 531 F. Supp. 2d 552, 574 (S.D.N.Y. 2007).

of damages becomes clear and definite." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 768 (2d Cir. 1994), cert. denied, 513 U.S. 1079, 115 S. Ct. 728 (1995).[11] "[A] debt is 'lost' and thereby becomes a basis for RICO trebling only if the debt (1) cannot be collected (2) 'by reason of' a RICO violation." Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158, 1165 (2d Cir.), cert. denied, 510 U.S. 945, 114 S. Ct. 385 (1993).[12] "Thus, a plaintiff who claims that a debt is uncollectible because of the defendant's conduct can only pursue the RICO treble damages remedy after his contractual rights to payment have been frustrated." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d at 768.[13] Damages are "'unrecoverable'" when "'their accrual is speculative' and 'their amount and nature unprovable.'" Bankers Trust Co. v. Rhoades, 859 F.2d at 1106.[14]

---

[11] See, e.g., Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1106 (2d Cir.1988); Hildene Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc., 11 Civ. 5832, 2012 WL 3542196 at *14 (S.D.N.Y. Aug. 15, 2012); DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc., 770 F. Supp. 2d 497, 520 (E.D.N.Y. 2011); Rosner v. Rosner, 766 F. Supp. 2d 422, 426 (E.D.N.Y. 2011); Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital Mkts., LLC, 07 Civ. 8139, 2008 WL 3925175 at *4 (S.D.N.Y. Aug. 26, 2008) (Chin, D.J.), aff'd, 347 F. App'x 711 (2d Cir. 2009).

[12] See, e.g., Apollon Waterproofing & Restoration, Inc. v. Bergassi, 87 F. App'x 757, 760 (2d Cir. 2004); Ritter v. Klisivitch, No. 06-CV-5511, 2008 WL 2967627 at *7 (E.D.N.Y. July 30, 2008); First Capital Asset Mgmt., Inc. v. Brickellbush, Inc., 218 F. Supp. 2d 369, 381 (S.D.N.Y. 2002) (Kaplan, D.J.), aff'd, 385 F.3d 159 (2d Cir. 2004).

[13] See, e.g., Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital Mkts., LLC, 347 F. App'x 711, 712 (2d Cir. 2009); Motorola Credit Corp. v. Uzan, 322 F.3d 130, 136 (2d Cir. 2003); Ritter v. Klisivitch, 2008 WL 2967627 at *6; Goldfine v. Sichenzia, 118 F. Supp. 2d 392, 398 (S.D.N.Y. 2000).

[14] See, e.g., Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d at 1165; First Nationwide Bank v. Gelt Funding Corp., 820 F. Supp. 89, 96 (S.D.N.Y. 1993), aff'd, 27 F.3d 763 (2d Cir. 1994), cert. denied, 513 U.S. 1079, 115 S. Ct. 728 (1995).

14

The Second Circuit has explicated this rule as it applies to lost debt in two key cases. In <u>Bankers Trust Co.</u> v. <u>Rhoades</u>, Bankers Trust commenced a civil RICO action asserting that it was harmed by defendants' bankruptcy fraud. 859 F.2d at 1098. Bankers Trust sought recovery of the loss of its legitimate debt, as well as past and future attorneys' fees. <u>Id.</u> at 1105. The Second Circuit held that "any claim for relief based on the lost-debt injury must . . . be dismissed without prejudice" because "the damages in this area are 'speculative' and 'unprovable.'" <u>Bankers Trust Co.</u> v. <u>Rhoades</u>, 859 F.2d at 1106. The Second Circuit reasoned that because bankruptcy proceedings still were pending,

> it is impossible to determine the amount of damages that would be necessary to make plaintiff whole, because it is not known whether some or all of the fraudulently transferred funds will be recovered by the corporation. Should they be recovered, Bankers would benefit along with BAC's other creditors and its injury would decrease. . . .
>
> [A]fter the claims that Bankers has in common with BAC are dealt with by the bankruptcy court-through recovery of all or part of BAC's assets, an order of abandonment, or some other final disposition of the lost-debt claims-Bankers' injury will be ascertainable, an action as to the injury will accrue, and Bankers will then have four years to bring a civil RICO action to recover the damages it has suffered in this area . . . .

<u>Bankers Trust Co.</u> v. <u>Rhoades</u>, 859 F.2d at 1106. With respect to the RICO claim for attorneys' fees, the Second Circuit held that Bankers Trust may recover past legal fees incurred for attempts to collect its judgment, but not future legal fees. <u>Id.</u> at 1105-06. The "trial court may, of course, permit supplementation of the complaint to allow for damages of this type suffered up to the time of trial." <u>Bankers Trust Co.</u> v. <u>Rhoades</u>, 859 F.2d at 1106.

In the second case, <u>Stochastic Decisions, Inc.</u> v. <u>DiDomenico</u>, 995 F.2d 1158 (2d Cir. 1993), a judgment creditor filed suit alleging claims for RICO violation, common law fraud, and

15

fraudulent conveyances of property, to prevent Stochastic from collecting on a prior judgment. Id. at 1161, 1163.  After a bench trial, the district court granted Stochastic damages on its RICO, fraudulent conveyance and common law fraud claims, as well as legal fees pursuant to the RICO claim for trying to collect the underlying judgment.  Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d at 1163-64.  Relying on Bankers Trust Co. v. Rhoades, the Second Circuit held that uncollected judgments, i.e., the lost debt damages, were unprovable because of ongoing efforts to collect the judgment even though Stochastic had obtained judgments for specific amounts.  Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d at 1165-66.  The Second Circuit reiterated its Bankers Trust holding that "a RICO claim does not accrue until it is established that collection of the claim or judgment has been successfully frustrated."  Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d at 1166.  As in Bankers Trust, the Second Circuit in Stochastic held that Stochastic was entitled to attorneys' fees as RICO damages for its efforts to collect the underlying judgment.  Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d at 1166-67.

NYKCool's lost debt is attributed to the alleged fraudulent transfer of assets to prevent NYKCool from collecting the underlying judgment against Pacific Fruit and Kelso.  (See pages 2-5 above.)  NYKCool asserts a claim for RICO damages for its lost debt, but also asserts causes of action to recover the judgment through veil piercing, alter ego and related common law claims.  (Dkt. No. 1: Compl. ¶ 75-109.)  Because of the pending alternative causes of action to allow NYKCool to collect the judgment, the Second Circuit's decisions in Bankers Trust and Stochastic require the conclusion that NYKCool's RICO damages are "'speculative' and 'their

amount and nature unprovable.'"[15] If NYKCool's ongoing efforts to collect on the judgment ultimately fail, NYKCool's civil RICO claim for a lost debt then will accrue.[16]

NYKCool asserts that the Second Circuit's later decision in GICC Capital Corp. v. Tech. Fin. Grp., Inc., 30 F.3d 289 (2d Cir. 1994), provides NYKCool with standing to pursue its RICO lost debt action. (Dkt. No. 22: NYKCool Opp. Br. at 10.) NYKCool's reliance on GICC Capital, however, is misplaced. In GICC Capital, the Second Circuit addressed the issue of proximate causation under RICO, not standing as to a lost debt claim. GICC Capital Corp. v. Tech. Fin. Grp., Inc., 30 F.3d at 292; see, e.g., Motorola Credit Corp. v. Uzan, 322 F.3d at 136-37 ("The

---

[15]  See, e.g., First Capital Asset Mgmt., Inc. v. Brickellbush, Inc., 218 F. Supp. 2d at 381 (Plaintiffs lack RICO standing on lost debt injury where "[t]heir efforts, as evidenced by the state law claims in this case, are continuing."), aff'd, 385 F.3d 159 (2d Cir. 2004); see also, e.g., Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital Mkts., LLC, 347 F. App'x at 713 (declining to limit Bankers Trust to situations where a bankruptcy case is pending); Hildene Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc., 2012 WL 3542196 at *14 (dismissing RICO claim; "as demonstrated by the numerous other claims [plaintiff] has raised in this litigation through which it may recoup its losses, [plaintiff's] RICO damages are not yet clear and definite and no RICO cause of action has yet accrued"); Goldfine v. Sichenzia, 118 F. Supp. 2d at 398 ("Plaintiffs' 118 separate State law claims . . . are the very claims that Plaintiffs must pursue in order to determine whether or not they suffered any injury compensable under RICO. Plaintiffs cannot come to this Court, with only a RICO claim as a jurisdictional predicate, and obtain adjudication of the State law claims that are a necessary predicate to ripeness and standing under the very statute they claim gives this Court jurisdiction in the first instance."); Ritter v. Klisivitch, 2008 WL 2967627 at *7 ("Plaintiff seeks leave to amend her pleading to assert a [RICO] claim for 'lost debt' injuries, claiming that collection of the amounts owed on the state court judgments has been 'successfully frustrated' by Defendants' predicate acts. Because of the ongoing bankruptcy proceeding, any such proposed claim would fail at this time.").

[16]  See also, e.g., Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d at 1166 ("In the event, however, that [plaintiff] should ultimately fail to collect the judgment in the [related case], it may then have a RICO claim as the basis for a separate action."); Bankers Trust Co. v. Rhoades, 859 F.2d at 1106 ("When the damages do become definite, a claim will accrue, and plaintiff will have four years to bring an action for recovery."); First Capital Asset Mgmt. v. Brickellbush, Inc., 219 F. Supp. 2d at 580-81.

district court's reliance on GICC Capital Corp. . . . is misplaced. . . . [T]he issue in GICC Capital was whether the plaintiff had established proximate cause so as to satisfy RICO standing . . . . In any event, neither case impairs the rule enunciated in First Nationwide."); First Capital Asset Mgmt. v. Brickellbush, Inc., 219 F. Supp. 2d at 579-86 (GICC Capital concerns proximate cause and "did not modify or overrule those portions of Bankers Trust and Stochastic dealing with the ripeness of lost debt injury. . . . [T]he Court adheres to its prior ruling that plaintiffs' alleged lost debt injury does not provide them with RICO standing because their ongoing collection efforts render the extent of the loss uncertain."); Burke v. Dowling, 944 F. Supp. 1036, 1051 (E.D.N.Y. 1995) ("The GICC Capital court, however, did not address the issue of the ripeness of the plaintiff's RICO injury . . . . The only issue before the court was the issue of proximate causation.").

Thus, NYKCool's RICO claim for lost debt injury, i.e., loss from being unable to collect the judgment, should be dismissed. NYKCool, however, also seeks recovery of reasonable attorneys' fees under RICO. (See page 7 above.) "Since Bankers Trust, it has been well settled that legal fees may constitute RICO damages when they are the proximate consequence of a RICO violation." First Capital Asset Mgmt. v. Brickellbush, Inc., 218 F. Supp. 2d at 382. NYKCool has standing to pursue a RICO claim for the attorneys' fees it has expended (and will expend to the time of trial) trying to collect the underlying judgment (but not for fees to obtain the underlying judgment). See, e.g., Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d at 1167 ("legal fees may constitute RICO damages when they are proximately caused by a RICO violation"); Bankers Trust Co. v. Rhoades, 859 F.2d at 1105; Ritter v. Klisivitch, 2008 WL 2967627 at *8 ("Plaintiff's allegations are sufficient to confer [RICO] standing insofar as she seeks fees expended in attempting

18

to collect on her judgments."); Cadle Co. v. Flanagan, No. Civ. 301CV531, 2006 WL 860063 at *7 (D. Conn. Mar. 31, 2006) ("[P]laintiffs were nevertheless entitled to pursue RICO claims for damages incurred in collecting outstanding debts where the defendants had frustrated collection through fraud.").

Accordingly, defendants' motion to dismiss NYKCool's fourth cause of action pursuant to RICO is GRANTED as to lost debt damages, but DENIED as to attorneys' fees.[17]

**CONCLUSION**

For the reasons stated above, defendants' motion to dismiss (Dkt. No. 16) should be GRANTED in part and DENIED in part.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written

---

[17] Defendants also assert that NYKCool's fourth cause of action is insufficient under Fed. R. Civ. P. 9(b). (Dkt. No. 17: Defs. Br. at 7.) For a discussion of the standards for Rule 9(b), see Ngwa v. Castle Point Mortg., Inc., 08 Civ. 0859, 2008 WL 3891263 at *5-6 (S.D.N.Y. Aug. 20, 2008) (Peck, M.J.) (& cases cited therein). The Court finds that NYKCool's complaint satisfies Rule 9(b). It specifies in detail the defendants' actions transferring money and business from Pacific Fruit and Kelso to the other defendant companies in order to frustrate NYKCool's judgment. (See pages 2-5 above.) In any event, the grant or denial of the motion on this ground will have virtually no impact on the scope of discovery in this case. It thus makes sense to allow the attorneys' fee aspect of the fourth cause of action to proceed at this stage and if necessary deal with the claim after discovery via a summary judgment motion. See, e.g., Speedmark Transp., Inc. v. Mui, 778 F. Supp. 2d 439, 444 (S.D.N.Y. 2011) (Peck, M.J.); William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co., 600 F. Supp. 2d 587, 590 (S.D.N.Y. 2009) (Peck, M.J.) (& cases cited therein); Kermanshah v. Kermanshah, 580 F. Supp. 2d 247, 268 (S.D.N.Y. 2008) (Peck, M.J.) (denying defendants' motion to dismiss plaintiff's fraud claim because it would not expand the scope of discovery where a surviving breach of contract claim substantially tracked the fraud claim).

H:\OPIN\NYKCOOL12-5754

objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 2240, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Kaplan (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
        November 9, 2012

Respectfully submitted,

_____
Andrew J. Peck
United States Magistrate Judge

Copies ECF to:  All Counsel
                Judge Lewis A. Kaplan