UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NYKCOOL A.B.,                                          :

                Plaintiff,                          :

           -against-                            :

PACIFIC INTERNATIONAL SERVICES, INC.;     :
PAN AMERICAN TRADING COMPANY, INC.;
FRUIT IMPORTERS AMERICAS, INC.; PACIFIC   :
GROUP HONORING, INC.; ECUADORIAN LINE,
INC.; SOUTH PACIFIC SHIPPING CO. LTD.;    :
ALVARO FERNANDO NOBOA PONTON;
CARLOS AGUIRRE; CARLOS AHLSTROM;          :
EDWARD HICKEY; ROBERT KISSINGER; &
TRUISFRUIT S.A.,                          :

             Defendants,                         :

            -and-                              :

PACIFIC FRUIT INC. & KELSO ENTERPRISES    :
LTD.,
                                          :
          Defendants-in-Interest.
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12 Civ. 5754 (LAK) (AJP)

**REPORT AND RECOMMENDATION**

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Lewis A. Kaplan, United States District Judge:**

        In an effort to collect a judgment previously entered against defendants-in-interest

Pacific Fruit and Kelso Enterprises, plaintiff NYKCool initiated the present action against various

related companies and individuals alleged to be liable for the judgment under veil piercing, alter ego

and successor liability theories.  (See generally Dkt. No. 1: Compl.; Dkt. No. 110: Am. Compl.)  The

facts underlying this dispute are set forth in the Court's prior decisions, familiarity with which is

assumed.  See NYKool A.B. v. Pac. Int'l Servs., Inc., 12 Civ. 5754, 2013 WL 1274561 (S.D.N.Y.

Mar. 29, 2013) (Peck, M.J.); NYKCool A.B. v. Pac. Int'l Servs., Inc., 12 Civ. 5754, 2012 WL 5462611 (S.D.N.Y. Nov. 9, 2012) (Peck, M.J.); NYKCool A.B. v. Pac. Fruit Inc., 10 Civ. 3867, 2012 WL 1255019 (S.D.N.Y. Apr. 16, 2012) (Peck, M.J.); NYKCool A.B. v. Pac. Fruit Inc., 10 Civ. 3867, 2011 WL 3666579 (S.D.N.Y. Aug. 9, 2011) (Peck, M.J.), aff'd, 507 F. App'x 83 (2d Cir. 2013); NYKCool A.B. v. Pac. Fruit Inc., 10 Civ. 3867, 2010 WL 4812975 (S.D.N.Y. Nov. 24, 2010) (Peck, M.J.).

Presently before the Court is NYKCool's November 8, 2013 motion for a default judgment on its amended complaint against newly-added defendant Truisfruit in the amount of $8,787,157.  (Dkt. No. 128: Notice of Motion.)  For the reasons set forth below, NYKCool's motion should be GRANTED.

## FACTS

### Background

In September 2011 in a related action, the Court confirmed a maritime arbitration award of $8,787,157 in NYKCool's favor against Pacific Fruit and Kelso, the companies responsible for marketing, importing and distributing Bonita brand bananas in the United States and Japan, respectively.  (10 Civ. 3867, Dkt. No. 47: 9/16/11 Judgment.)  See also NYKCool A.B. v. Pac. Int'l Servs., Inc., 12 Civ. 5754, 2013 WL 1274561 at *1 (S.D.N.Y. Mar. 29, 2013) (Peck, M.J.).  Pacific Fruit and Kelso are part of a network of companies controlled by Alvaro Noboa, that collectively supply Bonita brand bananas from Ecuador to be marketed and sold in the United States and worldwide.  (Dkt. No. 110: Am. Compl. ¶ 22.)  See NYKCool A.B. v. Pac. Int'l Servs., Inc., 2013 WL 1274561 at *3.

Before NYKCool could enforce its judgment, Pacific Fruit transferred all of its assets to Fruit Importers of America ("FIA"), a Noboa-controlled company created to replace Pacific Fruit

as the entity responsible for marketing and distributing Bonita bananas in the United States.  (See Dkt. No. 85: 8/14/13 Conf. Tr. at 3; Am. Compl. ¶¶ 51, 109.)

NYKCool initiated this second action to collect the judgment from other Noboa-controlled companies including FIA, as well as certain individual officers and directors, under theories of corporate veil-piercing, alter ego and successor liability.  (Dkt. No. 1: Compl.)  See also NYKCool A.B. v. Pac. Int'l Servs., Inc., 2013 WL 1274561 at *1.

On March 29, 2013, I issued a Report and Recommendation recommending summary judgment in favor of NYKCool against the Noboa-controlled companies, which Judge Kaplan adopted on June 14, 2013.  (Dkt. No. 69: 6/14/13 Order; Am. Compl. ¶ 74.)  See NYKCool A.B. v. Pac. Int'l Servs., Inc., 2013 WL 1274561 at *15.[1]  As to NYKCool's veil-piercing claim, I found:

> While defendants attempt to justify their business practices, ultimately they are unable to mitigate the strength of the evidence proving that the corporate defendants were alter egos of Pacific.
>
> Moreover, it "is clear that proof of a stripping of the assets of the subsidiary by the parent, motivated by a desire to render the subsidiary judgment proof, would constitute a fraud or wrong justifying piercing of the corporate veil."  Defendants have admitted that Pacific was stripped of its assets to render it judgment proof. . . .
>
> NYKCool's evidence of the defendants' fraud is further evidence supporting piercing the corporate veil.
>
> Accordingly, the Court should pierce the corporate veil and hold the corporate defendants liable for NYKCool's Judgment against Pacific.

NYKCool A.B. v. Pac. Int'l Servs., Inc., 2013 WL 1274561 at *10-12 (fn. & citations omitted).  As to NYKCool's claim that FIA is liable as Pacific Fruit's successor, I found:

---

[1]    Defendant South Pacific Shipping Co. Ltd. is excluded from the group of corporate defendants against whom summary judgment was granted.  (Dkt. No. 63: 4/4/13 Memo Endorsed Order; 6/14/13 Order at 2.)  Summary judgment also was denied as to individual defendants Aguirre and Hickey, and the action remains pending.  (6/14/13 Order at 2; Am. Compl. ¶ 74.)  See NYKCool A.B. v. Pac. Int'l Servs., Inc., 2013 WL 1274561 at *15.

> [T]he factors are to be analyzed in a flexible manner, disregarding mere questions of form; the heart of the inquiry is whether it was the intent of the successor to absorb and continue the operation of the predecessor.  Here, FIA did not exist, at least in any meaningful way, prior to April 2011.  FIA was created solely for the purpose of carrying on Pacific's business of importing Bonita bananas; Pacific gave up that $60 million business because Noboa did not want to pay NYKCool's judgment against Pacific.  Injustice would be effected if Pacific and FIA were allowed to avoid payment of a valid judgment entered by this Court.  Accordingly, the Court should find that FIA is liable as Pacific's successor.

NYKCool A.B. v. Pac. Int'l Servs., Inc., 2013 WL 1274561 at *15.

On July 10, 2013, judgment was entered in favor of NYKCool against the Noboa-controlled defendant companies for $8,787,157—the amount of NYKCool's underlying judgment against Pacific Fruit and Kelso.  (Dkt. No. 73: 7/10/13 Judgment; Am. Compl. ¶ 74.)  Before NYKCool could enforce its judgment, the Noboa judgment debtors rendered themselves judgment proof by transferring and assigning their assets.  (See Am. Compl. ¶¶ 75-78, 109; Dkt. No. 111: Keane 10/4/13 Aff. ¶ 7; 8/14/13 Conf. Tr. at 6-7.)

On or about July 18, 2013, FIA ceased its business as the U.S. marketer/distributor of Noboa's Bonita bananas.  (Dkt. No. 77: Hickey Aff. ¶ 4; 8/14/13 Conf. Tr. at 6-7, 14; Keane 10/4/13 Aff. Ex. 1: Keane 8/1/13 Aff. Ex. 4: 7/19/13 FIA Notice: "Fruit Importers Americas Inc. is no longer importing and distributing Bonita brand bananas.")  At the time, FIA owed approximately $4.5 million to Truisfruit—the Noboa-controlled company that supplies bananas from Ecuador to the U.S. marketing/distributing company (formerly Pacific Fruit, then FIA).  (8/14/13 Conf. Tr. at 6-7; Keane 10/4/13 Aff. ¶¶ 4-5; Am. Compl. ¶ 23; Hickey Aff. ¶¶ 2, 4; see Dkt. No. 102: 9/18/13 Conf. Tr. at 17.)  In partial satisfaction of that debt, FIA transferred its accounts receivables—"the only asset the company had," amounting to approximately $3 million in debts owed by U.S. customers—to Truisfruit, and instructed its U.S. customers to make payments to Truisfruit.  (See 8/14/13 Conf. Tr. at 6-7, 16; Am. Compl. ¶¶ 75-77, 109; Hickey Aff. ¶¶ 4-7; see also page 7 & n.4

below.)   Truisfruit then began supplying Bonita bananas to Redi Fresh Produce, apparently an independent, non-Noboa-controlled company, for distribution in the United States.   (See 8/14/13 Conf. Tr. at 6, 15; Hickey Aff. ¶¶ 3, 7; 9/18/13 Conf. Tr. at 14-15, 17; Keane 10/4/13 Aff. Ex. 1: Keane 8/1/13 Aff. Ex. 4: 7/19/13 FIA Notice ("Bonita brand bananas will be imported and distributed by Redi Fresh."); see also page 6 below.)

**Garnishee Redi Fresh and the Attached Funds**

On August 1, 2013, the Court entered an Order of Attachment requiring, inter alia, that "all banana cargoes entering the Port of New York under the 'Bonita' brand" be seized for purposes "of satisfying the judgment in the amount of $8,787,157" (the "Attachment Order").   (Dkt. No. 75: 8/1/13 Attachment Order at 1-2.)

Redi Fresh was served with the Order of Attachment on or about August 16, 2013. (Dkt. No. 88: 8/21/13 Conf. Tr. at 9.)   At a conference on August 21, 2013, Redi Fresh's counsel represented that Redi Fresh possessed approximately sixty-five cargo containers of Bonita bananas it had received and offloaded in Brooklyn over the previous ten days.   (8/21/13 Conf. Tr. at 3, 10; see Dkt. No. 125: 10/25/13 Letter at 3.)   Redi Fresh's counsel stated that Redi Fresh was "receiving the bananas as a consignee," "garnishee" or "broker," and that "true beneficial ownership" of the cargo did not reside with Redi Fresh.   (8/21/13 Conf. Tr. at 15; see Dkt. No. 102: 9/18/13 Conf. Tr. at 12-13, 17, 26, 33.)   According to their agreement, "Redi Fresh pays Truisfruit upon the sale of fruit to Redi Fresh's customers."   (9/18/13 Conf. Tr. at 30.)   The Court gave Redi Fresh the option of marketing the perishable bananas and posting adequate substitute collateral to the Court's registry or an escrow account.   (9/18/13 Conf. Tr. at 5, 29-32; 9/18/13 Dkt. Minute Entry; see 8/21/13 Conf. Tr. at 10, 12-13.)

6

On October 25, 2013, NYKCool informed the Court that Redi Fresh had agreed to deposit into the Court's registry any proceeds from the sale of its Bonita banana cargo.  (10/25/13 Letter at 3-4.)  On October 28, 2013, I signed and entered a Consent Order, which stated as follows:

> WHEREAS, garnishee Redi Fresh Produce, Inc. ("Garnishee") is holding funds reflecting sale proceeds collected from the sale of Bonita brand bananas. Plaintiff has asserted such funds from the sale of Bonita bananas should be restrained by Garnishee pursuant to the Attachment Order.  Garnishee has asserted that it owes non-party Truisfruit S.A., the supplier of the Bonita bananas, the sales proceeds collected from Garnishee's sale of Bonita bananas minus a management fee, costs, expenses and legal fees incurred by Garnishee in this action ("Attached Funds"); and Garnishee and Plaintiff wish to deposit into the Court Registry the Attached Funds; and
>
> WHEREAS, as of the date of this Order, the value of the Attached Funds is $1,376,787.60; and
>
> . . . .
>
> IT IS HEREBY ORDERED that:
>
> 1.  The Attached Funds presently under restraint by Garnishee in the amount of $1,376,787.60 and any Future Bonita Funds are hereby ordered to be transferred by Redi Fresh Produce, Inc. and deposited in the Court Registry of the United States District Court for the Southern District of New York. . . . ; and
>
> 2.  Upon receipt of the aforementioned deposits, the Clerk of the Court, as soon as his office allows, shall prepare the necessary forms for the purpose of placing said funds into the Court Registry Investment System, Interest Bearing Account; and
>
> . . . .
>
> 5.  The funds on deposit . . . shall be disbursed in whole or in part as follows:
>
> . . . .
>
> > C.  In accordance with any final judgment or award rendered by any Court or arbitration panel of competent jurisdiction . . . ; or
> >
> > D.  In accordance with any decision or order of this Honorable Court; and

. . . .

        8. Redi Fresh Produce, Inc. shall have discharged its obligations as garnishee in this action upon receipt of the Attached Funds into the Registry of the Court . . . .

(Dkt. No. 126: 10/28/13 Consent Order.)

        On November 15, 2013, the Cashier's Office received a deposit made by wire transfer in the amount of $142,785.72, which was placed into the Court's CRIS account on November 20, 2013. (See 11/18/13 Dkt. Entry.)

**Truisfruit and the Amended Complaint**

        Through ongoing discovery and submissions opposing injunctive relief,[2] NYKCool obtained evidence showing that the Noboa judgment debtors had transferred assets from FIA to Truisfruit in Ecuador to avoid the judgment, and that Truisfruit was part of the Noboa network. (Dkt. No. 111: Keane 10/4/13 Aff. ¶¶ 1, 4-7 & Ex. 6: Hickey Dep.;[3] Dkt. No. 77: Hickey Aff. ¶¶ 2-7; see page 4 above.)[4]

---

[2]    Simultaneously with the Attachment Order, the Court entered an Order to Show Cause wherein NYKCool sought an injunction preventing the Noboa judgment debtors from making any further asset transfers that would deliberately render them judgment proof. (Dkt. No. 76: 8/1/13 Order to Show Cause.)

[3]    In September 2013, NYKCool deposed defendant Hickey, who testified to Truisfruit's relationship with the Noboa judgment debtors. (See Keane 10/4/13 Aff. ¶ 5, citing Hickey deposition quotes.)

[4]    The evidence also includes an article identifying Truisfruit as one company in "[t]he carousel of companies" that comprises Noboa's "business empire" (Keane 10/4/13 Aff. Ex. 1: Keane 8/1/13 Aff. Ex. 5), as well as invoices and correspondence from FIA to its U.S. customers directing payments to be made to Truisfruit. (Keane 10/4/13 Aff. Ex. 1: Keane 8/1/13 Aff. Ex. 2: 7/18/13 FIA Letter to TC Tropical Produce Inc., Brooklyn, N.Y. ("We have assigned the following receivables to Truisfruit . . . . We kindly request you to address the payment in respect to this invoice as per Truisfruit"), 7/19/13 Truisfruit New Creditor Notice to TC Tropical Produce, Inc. ("on July 18th 2013, [FIA] transferred to TRUISFRUIT S.A. TC TROPICAL PRODUCE, INC. portfolio of Accounts Receivable . . . . Therefore, we kindly (continued...)

8

By Order to Show Cause signed September 30, 2013, I set a hearing date for October 21, 2013 and granted NYKCool's request for leave to amend its complaint to add Truisfruit as a defendant, finding:

> WHEREAS, especially upon a showing that assets are being alienated in an effort to defraud creditors and/or frustrate enforcement of a judgment, the Court is empowered to employ its equitable powers to the extent necessary to see the judgment satisfied.
>
> . . . .
>
> WHEREAS, the Court finds that the Court's equitable powers are required to prevent irreparable loss and damage to NYKCool, as well as the improper subversion of the Court's Judgments;
>
> WHEREAS, the Court finds NYKCool's remaining causes of action, including, inter alia, . . . NYKCool's proposed amended pleading adding TRUISFRUIT as a party defendant, are validly asserted . . . .

(Dkt. No. 114: 9/30/13 Order to Show Cause at 2-4.)

### Amended Complaint[5]

The amended complaint alleges that Truisfruit "is part of a vertically integrated fruit business controlled by defendant NOBOA," which has a principal place of business and offices

---

[4/]   (...continued)
request you to place your future payments as follows: . . . Beneficiary: TRUISFRUIT"), 7/23/13 Truisfruit Email to TC Tropical ("kindly send your payment check via DHL Courier . . . to . . . TRUISFRUIT S.A. Address: El Oro 101 y Vivero 5 de Junio, Guayaquil – Ecuador"); Keane 10/4/13 Aff. Ex. 1: Keane 8/1/13 Aff. Ex. 3: 7/18/13 FIA Letter to Westwood Banana, 7/19/13 Truisfruit New Creditor Notice to Westwood Banana, 7/26/13 Truisfruit Email to Westwood Banana; Keane 10/4/13 Aff. Ex. 1: Keane 8/1/13 Aff. Ex. 4: 7/19/13 Truisfruit New Creditor Notice to J.C. Produce Corp., 7/23/13 Truisfruit Email to J.C. Produce Corp.)

[5/]   Where, as here, "'the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (Carter, D.J. & Peck, M.J.) (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 3d § 2688 at 58-59 (3d ed. 1998)).

"located at El Oro 101 Interseccion Vivero – 5 de Junio, Guayaquil, Ecuador." (Dkt. No. 110: Am. Compl. ¶ 23.)   The amended complaint alleges that FIA transferred and assigned its accounts receivables to Truisfruit in Ecuador "in an effort to frustrate enforcement of the Court's partial final judgment," and "to otherwise render PACIFIC FRUIT, KELSO, FRUIT IMPORTERS, and the other debtors judgment-proof." (Am. Compl. ¶¶ 75-78, 109.)

The amended complaint describes the Noboa network as "sham," "alter ego," "shell," "subsidiary," and "sister" companies of one another.  (E.g., Am. Compl. ¶¶ 22, 31-35, 69, 83, 103.) It alleges that Truisfruit "is a successor to [FIA], which was in turn a successor to PACIFIC FRUIT and . . . liable for its debts." (Am. Compl. ¶ 83.)   The amended complaint asserts that, due to defendants' "obvious effort[s] to avoid collection on the judgment . . . the corporate veil should be pierced as to NOBOA and all of the defendant companies, . . . [and] all of their assets should be deemed one-and-the-same as those of the judgment debtors, as, indeed, that is the way those assets were concededly treated by the defendants throughout.  (Am. Compl. ¶ 109.)

**Service on Truisfruit**

In granting NYKCool's request for leave to file an amended complaint adding Truisfruit as a defendant, I ordered service upon Truisfruit as follows:

> Let service of a copy of this Order and the accompanying Declaration and Exhibits; if served upon TRUISFRUIT S.A. at El Oro 101 Interseccion Vivero – 5 Junio, Guayaquil, Ecuador (service to be made concurrent with the amended complaint via Fed. R. Civ. P. 4(h)(2) and 4(f)), and if served upon Mess'rs Hill Rivkins LLP, to the attention of Mr. Michael D. Wilson, Esq., 45 Broadway, Suite 1500, N.Y., N.Y. 10006-3793, on or before 5 o'clock in the afternoon on 10/4/13, 2013 (service to be made either by courier, fax, hand or email); be deemed good and sufficient service.

(Dkt. No. 114: 9/30/13 Order to Show Cause at 5, emphasis added.)

On October 3, 2013, the Clerk of Court filed a Certificate of Mailing certifying to service of a copy of the summons, amended complaint, Order to Show Cause and supporting documents on Truisfruit at El Oro Interseccion Vivero – 5 de Junio, Guayaquil, Ecuador, "pursuant to the provisions of FRCP 4(f)2(c)(ii)."  (Dkt. No. 106: 10/3/13 Cert. of Mailing.)  The clerk attached a Federal Express International Air Waybill, No. 802069516798, dated October 2, 2013 and addressed to Truisfruit at the same address.  (10/3/13 Cert. of Mailing Att.: 10/2/13 FedEx Waybill.)[6]

### Motion for Default Judgment Against Truisfruit

On November 6, 2013, the clerk of court entered a Clerk's Certificate of Default, noting that the amended complaint was served on Truisfruit "via Fed. R. Civ. P. 4(f) by service of the Clerk of Court," and "that the docket entries indicate that the defendant [Truisfruit] has not filed an answer or otherwise moved."  (Dkt. No. 127: 11/6/13 Cert. of Default.)  On November 8, 2013, NYKCool moved for a default judgment against Truisfruit.  (Dkt. No. 128: Notice of Motion.)[7]

To date, neither Hill Rivkins nor any other attorney has entered an appearance on Truisfruit's behalf, and Truisfruit has not filed anything in opposition to NYKCool's motion for default.  (See generally 12 Civ. 5754 Dkt.)

---

[6] Hill Rivkins, counsel to the judgment debtors, were served via ECF notification when the amended complaint, order to show cause and supporting documents were filed and docketed on October 2 and 4, 2013.  (See Dkt. No. 110: Am. Compl.; 9/30/13 Order to Show Cause; Dkt. No. 112: NYKCool 10/4/13 Br.; Dkt. No. 111: Keane 10/4/13 Aff.)

[7] The moving papers consist only of a two-page brief and two-page affidavit with attachments. (Dkt. No. 130: NYKCool 11/8/13 Br.; Dkt. No. 129: Keane 11/8/13 Aff. & Exs. 1-2.) NYKCool served its motion for default on Truisfruit via United States Mail at El Oro 101 Interseccion Vivero – 5 Junio, Guayaquil, Ecuador, pursuant to Local Rule 55.2.  (Dkt. No. 131: 11/8/13 Aff. of Service.)

**Additional Letter Submissions and Judicially-Noticed Facts**

On November 21, 2013, Hill Rivkins submitted a letter to the Court noting "that the FedEx International Air Waybill attached to the Clerk's Certificate of Mailing of the Amended Complaint on Truisfruit does not contain a signed delivery receipt as required by F.R.Civ.P. 4(f)(c)(2)(ii)." (11/21/13 Hill Rivkins Letter, record citation omitted.)  The letter states that the judgment debtors "object to the entry of default judgment" against Truisfruit because "entry of judgment on the basis of this purported service would be subject to collateral attack and thus unnecessarily delay and complicate resolution of the remaining claims in this action." (11/21/13 Hill Rivkins Letter.)

NYKCool responded on November 22, 2013, arguing that Hill Rivkins' objection to the entry of a default against Truisfruit is "a rather transparent pretext," and that Hill Rivkins "can either interpose an appearance for Truisfruit or continue to assert 'no dog in the fight,' but they should not be afforded standing only when it suits their true principals and not when it doesn't." (11/22/13 NYKCool Letter at 1.)

NYKCool also argued that a signed delivery receipt is not required because Fed. R. Civ. P. 4(f)(2)(C)(ii) is inapplicable in light of the Court's Order to Show Cause describing what would be "'deemed good and sufficient service.'" (11/22/13 NYKCool Letter at 2.) NYKCool points out that the FedEx tracking information shows delivery was made, "but upon examination was then 'refused by recipient.'" (11/22/13 NYKCool Letter at 2.)  Although the FedEx deliverer was "[f]orced to leave with the papers, notice was provided to Truisfruit that the package would remain

available for pick-up at the local Federal Express facility, where it remains to this day." (11/22/13

NYKCool Letter at 2.)[8]

## ANALYSIS

### I.   DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST TRUISFRUIT IN THE AMOUNT OF $8,787,157

#### A.   The Court Has Personal Jurisdiction Over Truisfruit

"'[B]efore a court grants a motion for default judgment, it may first assure itself that

it has personal jurisdiction over the defendant.'" City of N.Y. v. Mickalis Pawn Shop, LLC, 645

F.3d 114, 133 (2d Cir. 2011) (quoting Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619

F.3d 207, 213 (2d Cir. 2010)).[9]

---

[8]   The Court independently confirmed that FedEx's tracking website indicates that the package identified by the tracking number on the FedEx Waybill filed by the clerk of court (see page 10 above), was "[r]efused by recipient" on October 8, 2013, and remains "[a]t local FedEx facility" in Guayaquil, Ecuador as of the date of this Report and Recommendation.  See FedEx Tracking, https://www.fedex.com/fedextrack/index.html?tracknumbers=802069516798&cntry_code=us (last visited Dec. 20, 2013).  The Court takes judicial notice thereof. See, e.g., Ahn v. Inkwell Publ'g Solutions, Inc., 10 Civ. 8726, 2013 WL 3055793 at *4 (S.D.N.Y. June 19, 2013) (taking judicial notice of information available on U.S. Postal Service website in analyzing service of process); El-Aheidab v. Citibank (S.D.), N.A., No. C-11-5359, 2012 WL 506473 at *4 n.3 (N.D. Cal. Feb. 15, 2012) ("[T]he Court notes that the postal service's website indicates that each of Plaintiff's mailings were in fact delivered. The Court takes judicial notice thereof." (citing U.S. Postal Service, Track & Confirm, https://tools.usps.com/go/TrackConfirmAction)); see also, e.g., White v. Microsoft Corp., 454 F. Supp. 2d 1118, 1124 & n.7, 1131 (S.D. Ala. 2006) (delivery proved by "DHL records" including "a DHL tracking record"); Rockmore Inv. Master Fund Ltd. v. Power 3 Med. Prods., Inc., No. 600698/2010, 30 Misc. 3d 1206(A), 958 N.Y.S.2d 648 (table), 2010 WL 5491131 at *1, *3 (Sup. Ct. N.Y. Co. Dec. 23, 2010) (delivery proved by information from "the FedEx proof of delivery tracking system").

[9]   Accord, e.g., Ballard v. Conte, 11 Civ. 5874, 2013 WL 5716407 at *5 (S.D.N.Y. Oct. 18, 2013), report & rec. adopted, 2013 WL 6501234 (S.D.N.Y. Dec. 11, 2013); Chen v. Shi, 09 Civ. 8920, 2013 WL 3963735 at *4 (S.D.N.Y. Aug. 1, 2013); Ahn v. Inkwell Publ'g Solutions, Inc., 10 Civ. 8726, 2013 WL 3055793 at *3 (S.D.N.Y. June 19, 2013).

"When a court considers personal jurisdiction in the posture of a default judgment, although the plaintiffs retain the burden of proving personal jurisdiction, they can satisfy that burden with a prima facie showing, and may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." SEC v. Aimsi Techs., Inc., 650 F. Supp.2d 296, 301 (S.D.N.Y. 2009) (quotations omitted); accord, e.g., Eastboro Found. Charitable Trust v. Penzer, 13 Civ. 1343, --- F. Supp. 2d ----, 2013 WL 3001408 at *2 (S.D.N.Y. June 18, 2013) (Peck, M.J.) ("'Where, as here, a court relies on pleadings and affidavits, rather than conducting a "full-blown evidentiary hearing," the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant.'" (quoting DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001))).[10]

"In assessing whether personal jurisdiction is authorized, 'the court must look first to the [jurisdictional] statute of the forum state, in this instance New York.'" Whitaker v. Am. Telecasting, Inc., 261 F.3d at 208 (quoting Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997)).[11] "In New York, personal jurisdiction has two components: (1) 'service of process, which implicates due process requirements of notice and opportunity to be heard'; and (2) 'the power, or

---

[10]/    See also, e.g., MacDermid, Inc. v. Canciani, 525 F. App'x 8, 10 (2d Cir. 2013); Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 165 (2d Cir. 2005), cert. denied, 549 U.S. 951, 127 S. Ct. 379 (2006); Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999); Jazini v. Nissan Motor Co., 148 F.3d 181, 184 (2d Cir. 1998); PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997); Ball v. Matallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 196-97 (2d Cir.), cert. denied, 498 U.S. 854, 111 S. Ct. 150 (1990); Ahn v. Inkwell Publ'g Solutions, Inc., 2013 WL 3055793 at *3.

[11]/    See also, e.g., MacDermid, Inc. v. Canciani, 525 F. App'x at 10; Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d at 165; DiStefano v. Carozzi N. Am., Inc., 286 F.3d at 84; Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d at 784; Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir.), cert. denied, 519 U.S. 1006, 1007, 117 S. Ct. 508, 508 (1996).

reach, of a court over a party, so as to enforce judicial decrees.'" Ballard v. Conte, 2013 WL

5716407 at *6; see, e.g., Licci v. Lebanese Can. Bank, SAL, 673 F.3d 50, 59 (2d Cir. 2012) ("First,

the plaintiff's service of process upon the defendant must have been procedurally proper. . . . Second,

there must be a statutory basis for personal jurisdiction that renders such service of process

effective.").[12] "'If the exercise of jurisdiction is appropriate under that statute, the court must decide

whether such exercise comports with the requisites of due process.'" Whitaker v. Am. Telecasting,

Inc., 261 F.3d at 208.[13]

### 1.   Service of Process

"It is well settled that absent effective service, a court lacks jurisdiction over the

defendant and all actions pertaining to such defendants, including the entry of default judgment, are

void." First City, Tex.-Houston, N.A. v. Rafidain Bank, 90 Civ. 7360, 1992 WL 296434 at *1

(S.D.N.Y. Oct. 6, 1992) (collecting cases).[14]

------

[12]   See also, e.g., Ahn v. Inkwell Publ'g Solutions, Inc., 2013 WL 3055793 at *3; Rogers v. eColor Studio, No. 11-CV-4493, 2013 WL 752256 at *2 (E.D.N.Y. Feb. 7, 2013), report & rec. adopted, 2013 WL 750120 (E.D.N.Y. Feb. 27, 2013); de Ganay v. de Ganay, 11 Civ. 6490, 2012 WL 6097693 at *4 (S.D.N.Y. Dec. 6, 2012).

[13]   See also, e.g., MacDermid, Inc. v. Canciani, 525 F. App'x at 10; Licci v. Lebanese Can. Bank, SAL, 673 F.3d at 60; Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d at 165; Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d at 784; Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d at 567.

[14]   See also, e.g., Ahn v. Inkwell Publ'g Solutions, Inc., 10 Civ. 8726, 2013 WL 3055793 at *3 (S.D.N.Y. June 19, 2013) ("If a court enters a judgment by default in the absence of personal jurisdiction, the judgment 'is void within the meaning of Rule 60(b)(4).'"); Jon D. Derrevere, P.A. v. Mirabella Found., No. 10-cv-925, 2011 WL 1983352 at *1 (M.D. Fla. Apr. 26, 2011) ("The district court may enter a default judgment against a properly served defendant who fails to defend or otherwise properly appear pursuant to Federal Rule of Civil Procedure 55(b)(2). The Court must confirm that the defaulting defendant was properly served under the Federal Rules of Civil Procedure. Rule 4(h)(2) states that, for service upon individuals or corporations in a foreign country, Rule 4(f) is the appropriate rule." (citation omitted)),
(continued...)

Rule 4(h)(2) provides that a foreign company may be served "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(I)." Fed. R. Civ. P. 4(h)(2).  Rule 4(f) provides for the following manners of service in a foreign country:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice: . . . (C) unless prohibited by the foreign country's law, by: . . . (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f)(1)-(3).  Service made under subsections (f)(2) and (f)(3) must be proved "by a receipt signed by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee." Fed. R. Civ. P. 4(*l*)(2)(B) (emphasis added).

The September 30, 2013 Order stated that service would "be deemed good and sufficient" if made "via Fed. R. Civ. P. 4(h)(2) and 4(f)" upon Truisfruit "at El Oro 101 Interseccion Vivero – 5 Junio, Guayaquil, Ecuador." (Dkt. No. 114: 9/30/13 Order to Show Cause; see page 9 above.)  The October 3, 2013 Certificate of Mailing states that Truisfruit was served by the clerk's office "pursuant to the provisions of FRCP 4(f)2(c)(ii)" at the address specified in the Order, and the attached FedEx Waybill reflects that it was addressed to Truisfruit at that address.  (Dkt. No. 106: 10/3/13 Cert. of Mailing & Att.: 10/2/13 FedEx Waybill; see page 10 above.)  While a receipt

---

(...continued)
        report & rec. adopted, 2011 WL 1983338 (M.D. Fla. May 20, 2011).

signed by Truisfruit has not been filed, information available on the FedEx tracking website indicates that Truisfruit refused delivery on October 8, 2013.  (See pages 11-12 & n.8 above.)

The existence of an international agreement pertaining to the service of process is relevant to an analysis of the sufficiency of service under all three subsections of Rule 4(f).  See Fed. R. Civ. P. 4(f)(1)-(3).  NYKCool asserts that service was proper because the method employed here—FedEx delivery to Truisfruit in Ecuador—is "not prohibited by international agreement" since "Ecuador has not objected to the service-by-mail provisions of the Hague Convention."  (Dkt. No. 130: NYKCool 11/8/13 Br. at 1; Dkt. No. 129: Keane 11/8/13 Aff. ¶ 6.)  However, Ecuador is not a party to the Hague Convention on the Service of Process Abroad; it is a party to another international agreement—the Inter-American Convention on Letters Rogatory and Additional Protocol ("I-A Convention")—which NYKCool not only failed to address, but failed even to identify as the applicable treaty.[15]  See U.S. Dep't of State, Ecuador Judicial Assistance – Service of Process, http://travel.state.gov/law/judicial/judicial_5877.html (last visited Dec. 20, 2013) ("Ecuador is not a party to the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents

---

[15]/    Indeed, in its November 22, 2013 letter, NYKCool incorrectly represents that "Ecuador is not a party to any international agreement placing any restrictions on the manner of service." (11/22/13 Letter at 2.)  The Court notes that while NYKCool is being frustrated by the Noboa judgment debtors' shell game, it is not being helped as much as it should by its counsel's collection and enforcement efforts.  The Court several times has suggested that NYKCool hire experienced "collection counsel."  (E.g., Dkt. No. 88: 8/21/13 Conf. Tr. at 17: "I think it might be a good idea for you to consider hiring what I call collection counsel, who are much more experienced than most lawyers in how to deal with deadbeat judgment debtors . . . .").  See, e.g., NYKCool A.B. v. Pac. Fruit Inc., 10 Civ. 3867, 2012 WL 1255019 at *10 (S.D.N.Y. Apr. 16, 2012) (Peck, M.J.) ("The Court sympathizes with NYKCool's frustration with Pacific's conduct. . . . But this is at least the second application by NYKCool without sufficient procedural research and analysis.  NYKCool should stop filing motions out of frustration and focus on the proper procedures to recover on its judgment.").

in Civil and Commercial Matters.  The United States and Ecuador are parties to the  Inter-American

Convention on Letters Rogatory and Additional Protocol.").

       The clerk of court served Truisfruit by Federal Express to Ecuador pursuant to Fed.

R. Civ. P. 4(f)(2)(C)(ii).  (See page 10 above.)  Subsection (f)(2) is appropriately utilized where

either "there is no internationally agreed means" or there is "an international agreement [that] allows

but does not specify other means."  See Fed. R. Civ. P. 4(f)(2).  As discussed above, Ecuador is a

party to the I-A Convention.  (See page 16 above.)  Courts analyzing the I-A Convention have

concluded that it does not foreclose service by means other than letters rogatory, and thus it was

permissible to serve Truisfruit under subsection (f)(2).[16]

       The Noboa judgment debtors argue that service was insufficient because "the FedEx

International Air Waybill attached to the Clerk's Certificate of Mailing of the Amended Complaint

---

[16]    See, e.g., Kreimerman v. Casa Veerkamp, S.A. de C.V., 22 F.3d 634, 647 (5th Cir.) ("We simply hold that the Inter-American Convention on Letters Rogatory does not foreclose other methods of service among parties residing in different signatory nations, if otherwise proper and efficacious."), cert. denied, 513 U.S. 1016, 115 S. Ct. 577 (1994); Jon D. Derrevere, P.A. v. Mirabella Found., 2011 WL 1983352 at *2 ("Other courts have found that the Inter-American Convention's provisions regarding service of process are neither mandatory nor exclusive."); Paiz v. Castellanos, No. 06-22046-CIV, 2006 WL 2578807 at *1 (S.D. Fla. Aug. 28, 2006) ("As have other courts which have considered the issue, this Court finds that the Inter-American Convention's provisions regarding service of process are neither mandatory nor exclusive." (citing cases)); Hein v. Cuprum, S.A. de CV, 136 F. Supp. 2d 63, 70 (N.D.N.Y. 2001) ("The Inter-American Convention on Letters Rogatory is not the exclusive means to serve process on defendant . . . ."); Mayatextil, S.A. v. Liztex U.S.A., Inc., 92 Civ. 4528, 1994 WL 198696 at *5 (S.D.N.Y. May 19, 1994) (Sotomayor, D.J.) ("The [I-A] Convention merely provides one possible method of service, however.  It is neither mandatory nor exclusive."); In re Romero v. Ramirez, 100 A.D.3d 909, 910, 955 N.Y.S.2d 353, 354 (2d Dep't 2012) ("'[T]he Inter-American Convention permits alternative methods of service and . . . its procedures are not the exclusive means of service of process on defendants residing in a signatory nation.'"); Laino v. Cuprum S.A. de C.V., 235 A.D.2d 25, 31, 663 N.Y.S.2d 275, 279 (2d Dep't 1997) ("[T]he methods described in the Inter-American Convention are not the exclusive means of effecting service, the rule permits alternative means of service."); 1 V. Nanda & D. Pansius, Litigation of International Disputes in U.S. Courts §§ 2:10, 2:15 (2013).

on Truisfruit does not contain a signed delivery receipt as required by" Rule 4(f)(2)(C)(ii). (11/21/13 Hill Rivkins Letter, record citation omitted; see page 11 above.)  NYKCool argues that a signed delivery receipt was not required because "the Court's September 30, 2013 Order, which expressly permitted service upon Truisfruit via Rule '4(f),' not more specifically via '4(f)(c)(2),'" constituted an order under Rule 4(f)(3) permitting service by "any means whatsoever."  (11/22/13 NYKCool Letter at 2.)  It does not matter whether service was under Rule 4(f)(2) or 4(f)(3); the statutory proof of service requirement applies to service under both (f)(2) and (f)(3).  This provision may be satisfied "by other evidence satisfying the court that the summons and complaint were delivered to the addressee" Rule 4(*l*)(2)(B), and "[f]ailure to prove service does not affect the validity of service" Rule 4(*l*)(3).  See, e.g., Morse v. Elmira Country Club, 752 F.2d 35, 39-40 (2d Cir. 1984).  Based on the Federal Express tracking evidence, the Court is satisfied that the summons and complaint were delivered to Truisfruit and service was sufficient to meet the statutory and due process requirements.

Where, as here,  the evidence shows that a recipient refused to accept delivery of mailed service, courts repeatedly have excused the requirement of a signed receipt.  E.g., Nikwei v. Ross Sch. of Aviation, Inc., 822 F.2d 939, 944-45 (10th Cir. 1987) ("[W]here delivery by mail has been 'refused' by the addressee, and the letter is returned to the sender with that notation, '[t]he almost unanimous line of authority indicates that due process has been satisfied and that the court has acquired personal jurisdiction over the defendant.' . . . Thus, courts view service by registered or certified mail as being complete when such is refused through the act of the defendant."); Morse v. Elmira Country Club, 752 F.2d at 40; Salomon Bros. Inc. v. Huitong Int'l Trust & Inv. Corp., 94 Civ. 8559, 1997 WL 324051 at *3 n.1 (S.D.N.Y. June 13, 1997); Fed. Sav. & Loan Ins. Corp. v. Williams, Civ. A. No. 88-0135, 1988 WL 47862 at *1 (E.D. La. May 9, 1988) ("[T]o allow a

defendant to defeat service of process by refusing to accept a registered letter . . . would make mockery of and render it completely ineffective."); Gordon v. Hunt, 116 F.R.D. 313, 317-18 (S.D.N.Y.) (collecting cases), aff'd, 835 F.2d 452 (2d Cir. 1987), cert. denied, 486 U.S. 1008, 108 S. Ct. 1734 (1988); Trak Microcomputer Corp. v. Wearne Bros., 628 F. Supp. 1089, 1091-92 (N.D. Ill. 1985) ("The summons and complaint, however, were returned to the Clerk. The envelope in which they had been sent was marked in a manner which reflected that the reason for the non-delivery of the package was that the package was refused. . . . The manner in which the returned envelope was marked suggests that actual delivery of the summons and complaint was made to [the recipient]. . . . It is reasonable to infer from this mark that the summons and complaint were delivered to [the recipient] at the address specified by the Clerk, but, for some unknown reason, a person who apparently spoke on behalf of [the recipient] refused to accept the package. . . . In light of the circumstances of this case, this court finds that sufficient proof of delivery of the summons and complaint has been made to satisfy" the rule.); In re Law Research Servs., Inc., 386 F. Supp. 749, 752, 756 n.6 (S.D.N.Y. 1974) ("The Secretary mailed a copy to the debtor, but the mail was returned marked 'Not Accepted.' . . . [J]urisdiction cannot and should not be defeated simply by the cunning refusal of a defendant to accept the complaint when it arrives through the U.S. mail.").[17]

---

[17]     See, e.g., Lidas, Inc. v. United States, 238 F.3d 1076, 1084 (9th Cir.), cert. denied, 533 U.S. 903, 121 S. Ct. 2245 (2001); Lumbard v. Shasha, 84 Civ. 0009, 1984 WL 908 at *2 (S.D.N.Y. Sept. 21, 1984); Bersch v. Drexel Firestone, Inc., 389 F. Supp. 446, 462-63 (S.D.N.Y. 1974) ("Since the summons . . . was not accepted, it would be unreasonable to require as proof of service a receipt signed by the addressee, and proof of service must be sought elsewhere. Upon examination of the postmarks and other official markings which appear on the returned envelope, the court is convinced that delivery was in fact made . . . ." (citation omitted)), aff'd in part, rev'd in part on other grounds, 519 F.2d 974 (2d Cir.), cert. denied, 423 U.S. 1018, 96 S. Ct. 453 (1975); Patel v. S. Brokers, Ltd., 277 S.C. 490, 493-95, 289 S.E.2d 642, 644-45 (S.C. 1982) ("[I]t can hardly be logically argued that one may avoid the process of the court by merely refusing to accept a letter known to contain a
(continued...)

In light of the evidence showing the accuracy of the address where Truisfruit was served,[18] the fact that service also was made upon the Noboa judgment debtors' counsel who likely communicated with Truisfruit as evidenced by their letter objecting to the service on Truisfruit (see page 11 above), the further likelihood that Truisfruit was aware of this action by the attachment of proceeds owed to it by garnishee Redi Fresh (see pages 5-7 above),[19] and the Noboa companies'

---

[17]    (...continued)
Summons and Complaint. . . . Opportunity to participate and defend was available to the Defendant who instead 'slammed the door closed' and by so doing refused to be a party to the litigation. . . . The Summons and Complaint were available to the Defendant; the mailman was not required to ram them down the Defendant's throat."); 28 Federal Procedure, Lawyers Edition § 65:205 (2013) ("[S]ervice of process by registered mail is effective where the returned envelope containing the summons is marked 'refused' by the mail carrier, indicating that delivery of the summons was made on the defendant."); 72 P. Coltoff, C.J.S. Process §§ 78, 108, 114 (2013).

[18]    In July 2013, Truisfruit instructed its U.S. customers to send their payments via DHL, a private courier similar to FedEx, to the same address.  (See page 7 & n.4 above.)  See, e.g., Ehrenfeld v. Salim a Bin Mahfouz, 04 Civ. 9641, 2005 WL 696769 at *3 (S.D.N.Y. Mar. 23, 2005) ("Service via mail to Defendant's post-office box would also likely notify Defendant of the proceedings.  Defendant has . . . represented that he will receive communications that are sent to the post-office box.  Based on that representation, the Court finds that service by mail to the post-office box is reasonably calculated to provide Defendant with notice."); Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff, 638 F. Supp. 714, 725 (S.D.N.Y. 1986) ("Default judgment is granted against the Trust pursuant to Rule 55, F. R. Civ. P., for failing to plead or otherwise defend against this suit. . . . The Trust was served by the Clerk of this Court . . . by registered mail, return receipt requested, addressed to the business address of the Trustee . . . : the same address that was used by plaintiff to correspond with the Trust . . . ."); Cortez Dev. Co. v. N.Y. Capital Grp., Inc., 401 So. 2d 1163, 1165 (Fla. Dist. Ct. App. 1981) (service held effective where "the letter was marked 'REFUSED,'" and "the address of [the recipient] was correct according to other records and information").

[19]    E.g. Shaffer v. Heitner, 433 U.S. 186, 198 n.16, 97 S. Ct. 2569, 2576 n.16 (1977) ("[A]ttachment . . . would provide greater assurance that the defendant would actually receive notice of the action . . . ."); see also, e.g., Restatement (First) of Judgments § 36 cmt. d (1942) (noting that "the garnishee owes a duty to the defendant to take reasonable steps to notify him of the proceeding, if the defendant has no other notice").

history of frustrating enforcement of the judgment (see pages 2-5 above),[20] the Court finds that service was sufficient under the circumstances to confer personal jurisdiction over Truisfruit.  See, e.g., Cook v. Toidze, No. 07-CV-0712, --- F. Supp. 2d ----, 2013 WL 2995349 at *8 (D. Conn. June 13, 2013); Semi Conductor Materials, Inc. v. Agric. Inputs Corp., 96 Civ. 7902, 1998 WL 388503 at *5 (S.D.N.Y. June 23, 1998) (Kaplan, D.J. & Peck, M.J.) (granting default judgment where defendant's "claim that it did not receive notice of this lawsuit simply is not credible").[21]

## 2.  Truisfruit is Doing Business in New York and Constitutional Due Process is Satisfied

New York's general jurisdiction statute, C.P.L.R. § 301, traditionally applies to corporations "'doing business'" in New York, "'not occasionally or casually, but with a fair degree of permanence and continuity.'"  Hearst Corp. v. Goldberger, 96 Civ. 3620, 1997 WL 97097 at *8

---

[20]   See, e.g., Int'l Controls Corp. v. Vesco, 593 F.2d 166, 175 n.4 (2d Cir.) ("[W]here the defendant has a long history of avoiding process servers, due process is accorded without the use of a return receipt."), cert. denied, 442 U.S. 941, 99 S. Ct. 2884 (1979); Avianca, Inc. v. Corriea, Civ. A. No. 85-3277, 1991 WL 496132 at *2 (D.D.C. May 31, 1991) ("Confronted with a purposeful process evader, the court need not require that a return receipt be filed in order to find that service has been completed."); Cortez Dev. Co. v. N.Y. Capital Grp., Inc., 401 So. 2d at 1165 (where "the letter was marked 'REFUSED'" and the addressee "had succeeded in quashing an earlier service," service was held effective in light of evidence of "the prior abortive service").

[21]   Accord, e.g., Jon D. Derrevere, P.A. v. Mirabella Found., 2011 WL 1983352 at *3 (service "by use of International Federal Express requiring a signed receipt that was dispatched by the Clerk of the Court" deemed effective); 28 Federal Procedure, Lawyers Edition § 65:206 ("[D]ue process requires only notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action, and where this standard has been satisfied, proof of actual receipt is not required."); see also, e.g., Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co., 03 Civ. 8554, 2005 WL 1123755 at *4-5 (S.D.N.Y. May 11, 2005); cf., e.g., Moskovitz v. La Suisse, 06 Civ. 4404, 2013 WL 6197163 at *3 (S.D.N.Y. Nov. 25, 2013) ("Whether the corporation received the documents or not is of no moment—and the admitted inability to deliver is no bar to the entry of a default judgment."); Burda Media, Inc. v. Blumenberg, 97 Civ. 7167, 2004 WL 1110419 at *9 (S.D.N.Y. May 18, 2004), aff'd, 417 F.3d 292 (2d Cir. 2005).

(S.D.N.Y. Feb. 26, 1997) (Peck, M.J.) (quoting J. McLaughlin, Practice Commentary to CPLR §§ C:301:1, C:301:2 at pp. 7-9 (McKinney's 1990)); accord, e.g., United Mobile Techs., LLC v. Pegaso PCS, S.A. de C.V., No. 11-2813-CV, 2013 WL 335965 at *1 (2d Cir. Jan. 30, 2013) ("Under N.Y. C.P.L.R. § 301, general jurisdiction is established if the defendant is shown to have 'engaged in continuous, permanent, and substantial activity in New York.'").[22]

Truisfruit is "doing business" in New York. First, Truisfruit's sale of over $1 million in bananas to Redi Fresh in New York and its prior sales of millions of dollars worth of bananas to FIA and Pacific Fruit in New York (see pages 2-7 above), is sufficient for doing business jurisdiction under C.P.L.R. § 301. See, e.g., Bristol-Myers Squibb Co. v. Matrix Labs. Ltd., 12 Civ. 5846, --- F. Supp. 2d ----, 2013 WL 4056219 at *5 (S.D.N.Y. Aug. 12, 2013) (allegations that defendant "has substantial business dealings in New York and derives substantial revenue from those activities" held "sufficient to satisfy the 'doing business' standard for general jurisdiction under New York law"); 4A Wright & Miller, Federal Practice & Procedure § 1069.2 (3d ed. 2013) ("[W]hen a corporation solicits business in the forum state . . . through the constant efforts of locally based agents, or maintains a distributor in the forum state, it usually is held to be doing business in the state for purposes of empowering courts in that state to assert jurisdiction." (fns. omitted)).[23]

---

[22]     See also, e.g., Saudi v. Marine Atl., Ltd., 306 F. App'x 653, 654-55 (2d Cir. 2009); Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985) (citing N.Y. cases); Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 762 (2d Cir. 1983); Eastboro Found. Charitable Trust v. Penzer, 13 Civ. 1343, --- F. Supp. 2d ----, 2013 WL 3001408 at *3 (S.D.N.Y. June 18, 2013) (Peck, M.J.); Glencore AG v. Bharat Aluminum Co., 10 Civ. 5251, 2010 WL 4323264 at *4 (S.D.N.Y. Nov. 1, 2010).

[23]     See also, e.g., Carr v. Pouilloux, S.A., 947 F. Supp. 393, 395-96 (C.D. Ill. 1996) (Defendant "is a foreign corporation . . . positioned at the beginning of a vast distribution operation, where it realizes a great economic benefit from multiple sales in distant forums. It manufactures . . . products for distribution by an American distributor with the knowledge (continued...)

Second, because the amended complaint alleges that Truisfruit is an alter ego and/or successor in interest to the Noboa judgment debtors, general personal jurisdiction over Truisfruit may be established by virtue of its status as an alter ego of the Noboa judgment debtors that admittedly do business here.[24]  See, e.g., S. New Eng. Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010) ("It is also well established that the exercise of personal jurisdiction over an alter ego corporation does not offend due process.  We need only determine, then, whether [plaintiff] made sufficiently supported allegations that, if proven true, would establish that the [defendant] entities and their parent . . . are alter egos." (citation omitted)); Transfield ER Cape Ltd. v. Indus. Carriers, Inc., 571 F.3d 221, 224 (2d Cir. 2009) ("[I]n general, 'alter egos are treated as one entity' for jurisdictional purposes.  In addition, we have previously concluded that there was personal jurisdiction over a party where its corporate alter ego 'participated fully in the proceedings and therefore waived any objections to lack of service of process.'" (citations omitted)); Glencore AG v. Bharat Aluminum Co., 2010 WL 4323264 at *5 ("Courts will find that an alleged alter ego is

---

[23]/   (...continued)
that the distributor will offer these products for sale throughout the entire United States. . . . Companies that engage in international commerce should not expect to use the national boundaries that they willingly cross in exporting merchandise as a shield from liability . . . in another country." (citation omitted)).

[24]/   The Noboa judgment debtors did not object to this Court's exercise of personal jurisdiction over them.  (See Dkt. No. 16: 8/20/12 Notice of Motion; Dkt. No. 34: Answer ¶¶ 68-75.) See, e.g., City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 134 (2d Cir. 2011) ("It is well established that a party forfeits its defense of lack of personal jurisdiction by failing timely to raise the defense in its initial responsive pleading.").  Moreover, NYKCool's allegations are sufficient to establish that alter ego Noboa judgment debtors are doing business in New York within the meaning of New York's general jurisdiction statute inasmuch as they contracted to and have sold, transported, marketed and distributed Bonita bananas in New York on "'a regular weekly'" basis for approximately 40 years.  (Dkt. No. 110: Am. Compl. ¶¶ 2-3, 14-15, 20-22, 29, 51, 75-81.)

doing business in New York 'when the subsidiary is acting as an agent for the parent, or when the parent's control is so complete that the subsidiary is a "mere department" of the parent.'").

In the context of a default, NYKCool's allegations, including that Truisfruit is controlled by Noboa and that FIA's assets were transferred to Truisfruit in an effort to frustrate enforcement of the judgment (see pages 8-9 above), are sufficient to establish that Truisfruit and the Noboa judgment debtors are alter egos. Cf., e.g., NYKCool A.B. v. Pac. Int'l Servs., Inc., 12 Civ. 5754, 2013 WL 1274561 at *8-12 (S.D.N.Y. Mar. 29, 2013) (Peck, M.J.) (holding parallel allegations sufficient to support alter ego liability under more stringent standard).[25]

Accordingly, NYKCool's allegations are sufficient to establish this Court's personal jurisdiction over Truisfruit. See, e.g., S. New Eng. Tel. Co. v. Global NAPs Inc., 624 F.3d at 138-39; Phillips v. Reed Grp., Ltd., 07 Civ. 3417, --- F. Supp. 2d ----, 2013 WL 3340293 at *25 (S.D.N.Y. July 1, 2013); Ferrara v. Island Logistics, Inc., No. CV 10-6019, 2011 WL 7091798 at *2 (E.D.N.Y. Dec. 19, 2011) ("These well-pleaded allegations about the relationship between the two defendant companies are deemed admitted as a result of the default, and the plaintiffs have, pursuant to applicable caselaw, established that [the two defendant companies] are alter-ego . . . entities, jointly and severally liable for all obligations under the CBAs and Trust Agreement."), report & rec. adopted, 2012 WL 214223 (E.D.N.Y. Jan. 24, 2012); Int'l Equity Invs., Inc. v.

---

[25]/    See, e.g., Alterseekers, Inc. v. Brandforce SF, LLC, No. 12-CV-5392, 2013 WL 5236533 at *5 (E.D.N.Y. Sept. 16, 2013); SEC v. Aimsi Techs., Inc., 650 F. Supp. 2d 296, 301 (S.D.N.Y. 2009) ("'Establishing the exercise of personal jurisdiction over an alleged alter ego requires application of a less stringent standard than that necessary to pierce the corporate veil for purposes of liability.'"); Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd., 475 F. Supp. 2d 456, 459 (S.D.N.Y. 2007) (Kaplan, D.J.) ("[T]his standard is relaxed where the alter ego theory is used not to impose liability, but merely to establish jurisdiction."); Quebecor World (USA), Inc. v. Harsha Assocs., L.L.C., 455 F. Supp. 2d 236, 243 (W.D.N.Y. 2006) (citing Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)).

Opportunity Equity Partners, Ltd., 475 F. Supp. 2d at 459-60 ("[P]laintiffs have carried their burden,

for purposes of the motion to dismiss for lack of personal jurisdiction, of sufficiently demonstrating

that [defendants] are alter egos of [New York defendants] and thus have justified the conclusion,

for present purposes, that [defendants] are subject to jurisdiction on the claims in respect of which

they are sued as alleged alter egos."); Hughes v. BCI Int'l Holdings, Inc., 452 F. Supp. 2d 290, 301

(S.D.N.Y. 2006); Satcorp Int'l Grp. v. China Nat'l Imp. & Exp. Corp., 917 F. Supp. 271, 279

(S.D.N.Y. 1996) (Kaplan, D.J.) (Alter ego entity's "presence in New York is attributable to

[defendant] for jurisdictional purposes.  The motion of [defendant] to dismiss for lack of personal

jurisdiction would be denied . . . ."), vacated in part on other grounds, 101 F.3d 3 (2d Cir. 1996).[26]

### B.   Truisfruit is Liable on Default for the Full Judgment Amount of $8,787,157

Because Truisfruit is subject to this Court's personal jurisdiction, default judgment

should be entered in favor of NYKCool against Truisfruit—jointly and severally with the Noboa

judgment debtors—for $8,787,157, the total judgment amount.  See, e.g., Trs. of N.Y.C. Dist.

Council of Carpenters Pension Fund v. Integrated Structures Corp., 11 Civ. 8975, 2013 WL 5996356

at *6 (S.D.N.Y. Nov. 12, 2013) ("because [the companies] are alter egos . . . Plaintiffs shall have

judgment against [defendant] in the amount of $159,687.88, arising out of the default judgment

entered" against defendant's alter ego in the related action); Li v. A Perfect Day Franchise, Inc., No.

10-CV-01189, 2012 WL 2236752 at *11 (N.D. Cal. June 15, 2012) ("All Defendants . . . are the alter

---

[26]   Having determined that New York's jurisdictional statute is satisfied, Constitutional due process necessarily also is satisfied.  See, e.g., Bristol-Myers Squibb Co. v. Matrix Labs. Ltd., 2013 WL 4056219 at *5 n.3 ("Because the 'continuous and systematic test' of C.P.L.R. § 301 does not provide for jurisdiction as broad as that of the Due Process Clause, the exercise of jurisdiction over a foreign corporation under § 301 ordinarily comports with due process."); see also, e.g., Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 764 n.6 (2d Cir. 1983); China Nat'l Chartering Corp. v. Pactrans Air & Sea, Inc., 882 F. Supp. 2d 579, 598 & n.135 (S.D.N.Y. 2012) (Kaplan, D.J.).

egos of [defendant company].  They are thus jointly and severally liable for the full amount of the judgment entered in this case." (citation omitted)); <u>Ferrara</u> v. <u>Island Logistics, Inc.</u>, No. CV 10-6019, 2011 WL 7091798 at *2 (E.D.N.Y. Dec. 19, 2011), <u>report & rec. adopted</u>, 2012 WL 214223 (E.D.N.Y. Jan. 24, 2012); <u>see also</u>, <u>e.g.</u>, <u>Jon D. Derrevere, P.A.</u> v. <u>Mirabella Found.</u>, No. 10-cv-925, 2011 WL 1983352 at *3 (M.D. Fla. Apr. 26, 2011), <u>report & rec. adopted</u>, 2011 WL 1983338 (M.D. Fla. May 20, 2011).

## II.    IN ADDITION OR IN THE ALTERNATIVE, DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST TRUISFRUIT PURSUANT TO THIS COURT'S EXERCISE OF QUASI IN REM JURISDICTION OVER THE ATTACHED FUNDS

Even if personal jurisdiction were lacking, which it is not, Truisfruit still would be amenable to suit because this Court has quasi in rem jurisdiction based on the presence of Truisfruit's property in New York—namely, the Redi Fresh funds owed to Truisfruit for banana sales, which have been attached and some of which were deposited into the Court's registry.  (<u>See</u> pages 5-7 above.)

### A.    Legal Principles Governing Quasi in Rem Jurisdiction

"Where a court lacks personal jurisdiction over a party, jurisdiction may be established 'based on the court's power over property within its territory.'" <u>Glencore AG</u> v. <u>Bharat Aluminum Co.</u>, 10 Civ. 5251, 2010 WL 4323264 at *5 (S.D.N.Y. Nov. 1, 2010).[27]  "'The effect of

---

<u>27/</u>    <u>Accord</u>, <u>e.g.</u>, <u>Shaffer</u> v. <u>Heitner</u>, 433 U.S. 186, 199, 97 S. Ct. 2569, 2577 (1977); <u>see also</u>, <u>e.g.</u>, 21 T. Muskus, A. Knickerbocker, J. Levin & B. Van Arsdale, <u>C.J.S. Courts</u> § 72 (2013) ("Quasi in rem jurisdiction is based on property located within the state which is applied to satisfaction of the claim against the defendant."); <u>Restatement (First) of Judgments</u> § 36 (1942).

a judgment in such a case is limited to the property that supports jurisdiction.'" Glencore AG v.

Bharat Aluminum Co., 2010 WL 4323264 at *5.[28]

      In one type of judgment quasi in rem, "the plaintiff seeks to apply what he concedes

to be the property of the defendant to the satisfaction of a claim against him." Feder v. Turkish

Airlines, 441 F. Supp. 1273, 1276 (S.D.N.Y. 1977).[29]  In such cases, "'the presence of the property

alone' does not support jurisdiction" if "that property which serves as the basis for jurisdiction 'is

completely unrelated to the plaintiff's cause of action.'" Glencore AG v. Bharat Aluminum Co.,

2010 WL 4323264 at *5.[30]  Rather, "the court must then consider whether the exercise of jurisdiction

will offend the Due Process clause under the Fourteenth Amendment, which permits a state to

---

[28]/  Accord, e.g., Shaffer v. Heitner, 433 U.S. at 199, 97 S. Ct. at 2577; see also, e.g., 4A Wright & Miller, Federal Practice & Procedure § 1070 (3d ed. 2013) ("If the plaintiff eventually secures a judgment in a quasi-in-rem action, it will be satisfied to the extent possible out of the attached property, but that . . . is where the court's power ends."); 21 T. Muskus, A. Knickerbocker, J. Levin & B. Van Arsdale, C.J.S. Courts § 72 ("Where the action is quasi in rem, the judgment is limited to the property that supports jurisdiction and does not impose a personal liability on the property owner since the property owner is not before the court.").

[29]/  Accord, e.g., Shaffer v. Heitner, 433 U.S. at 199 n.17, 97 S. Ct. at 2577 n.17; see also, e.g., 21 T. Muskus, A. Knickerbocker, J. Levin & B. Van Arsdale, C.J.S. Courts § 72 ("Quasi in rem jurisdiction exists when the property of the defendant is subject to the jurisdiction of the court but the cause of action does not directly relate to that property.  It is defined as that which affects only the interest of particular persons in specific property as distinguished from proceedings in rem which determine interests in specific property as against the whole world." (fn. omitted)); Restatement (First) of Judgments §§ 3 cmt. d, 32 cmt. a, 36 cmt. a.

[30]/  See, e.g., 4A Wright & Miller, Federal Practice & Procedure § 1070 ("The presence of property alone . . . will not support jurisdiction, although . . . it 'may bear on the existence of jurisdiction by providing contacts among the forum State, the defendant, and the litigation.'"); 21 T. Muskus, A. Knickerbocker, J. Levin & B. Van Arsdale, C.J.S. Courts § 72 ("If the presence of property in a state is to be the basis of jurisdiction in that state for a judgment against a nonresident defendant, the property in the state must be . . . related to the underlying controversy.  Where the property serving as the jurisdictional basis for the lawsuit has no relationship to the cause of action, and there are no other ties among the defendant, the forum and the litigation, quasi in rem jurisdiction will be lacking." (fns. omitted)).

exercise personal jurisdiction over a non-resident defendant with whom it has minimum contacts

so long as the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial

justice.'" Glencore AG v. Bharat Aluminum Co., 2010 WL 4323264 at *5 (fn. omitted).  Thus,

while the attached property need not be related completely to the underlying claim, "the nonresident

owner [must] ha[ve] undertaken acts with respect to the attached property which placed him on

notice of the possibility of his having to defend such property in the foreign forum."  Feder v.

Turkish Airlines, 441 F. Supp. at 1279 (fn. omitted).[31]

### B.   Application to Truisfruit

Pursuant to this Court's Attachment Order, garnishee Redi Fresh deposited into the

Court's registry funds reflecting proceeds from the sale of Bonita bananas shipped by Truisfruit to

New York for distribution, which Redi Fresh admits "it owes [these proceeds to] non-party

Truisfruit S.A., the supplier of the Bonita bananas."  (See page 6 above.)  These deposited funds

---

[31]   Because New York's requirements for the exercise of personal jurisdiction are more
restrictive than the constitutional requirements, facts that would be insufficient under New
York's standard but adequate under the constitutional standard will support the exercise of
quasi in rem jurisdiction.  See Banco Ambrosiano, S.P.A. v. Artoc Bank & Trust Ltd., 62
N.Y.2d 65, 71-72, 476 N.Y.S.2d 64, 67 (1984) ("As noted above CPLR 302 does not provide
for in personam jurisdiction in every case in which due process would permit it.  Thus, a
'gap' exists in which the necessary minimum contacts, including the presence of defendant's
property within the State, are present, but personal jurisdiction is not authorized by CPLR
302.  It is appropriate, in such a case, to fill that gap utilizing quasi-in-rem principles.
Whether quasi-in-rem jurisdiction exists in a given case involves an inquiry into the presence
or absence of the constitutionally mandated minimum contacts.  Given this limited inquiry,
cases in which we have determined that a given set of facts is insufficient for the exercise
of personal jurisdiction, will not necessarily be dispositive." (citations omitted)); see also,
e.g., Feder v. Turkish Airlines, 441 F. Supp. at 1279 n.5 ("Or, a nonresident's activities
unrelated to the litigation (and the seized property) might be too minimal for personal
jurisdiction under the 'doing business' rubric, but sufficient to support quasi-in-rem
jurisdiction."); 21 T. Muskus, A. Knickerbocker, J. Levin & B. Van Arsdale, C.J.S. Courts
§ 72 ("Whether quasi in rem jurisdiction exists in a given case involves an inquiry into the
presence or absence of constitutionally mandated minimum contacts.").

constitute "an intangible form of property belonging to" Truisfruit.  Shaffer v. Heitner, 433 U.S. 186, 200, 97 S. Ct. 2569, 2578 (1977).[32]

        In light of Truisfruit's contacts with New York (see pages 22-24 above) and the relationship between the attached funds and this action—i.e., the location of the attached funds in New York is a result of Truisfruit ceasing its sale of Bonita bananas to FIA (and before that to Pacific Fruit) in New York and selling instead to Redi Fresh for distribution in New York in an effort to render FIA, Pacific Fruit and the other Noboa judgment debtors judgment proof (see pages 4-7 above)—the exercise of quasi in rem jurisdiction here does not offend due process.  See, e.g., Feder v. Turkish Airlines, 441 F. Supp. 1273, 1278-79 (S.D.N.Y. 1977) ("The voluntary opening by [defendant] of a bank account in New York satisfies the 'minimum contacts' of International Shoe, as well as that requirement of foreseeability imparted by Shaffer into quasi in rem actions . . . . The attachment in this case [does not] arise[] . . . from the unpredictable visitations of [defendant's] debtor . . . . The attachment arises from a commercial bank account which [defendant] voluntarily opened in New York for the furtherance of its business."); Banco Ambrosiano, S.P.A. v. Artoc Bank & Trust Ltd., 62 N.Y.2d 65, 72-73, 476 N.Y.S.2d 64, 67-68 (1984) ("These factors—the relationship between the cause of action and the property, the activities to be performed in New York under the parties' agreement, and [defendant's] other ties with New York—combine to render the exercise of

---

[32]    See, e.g., British Marine PLC v. Aavanti Shipping & Chartering Ltd., No. 13 Civ. 0839, 2013 WL 6092821 at *3 (E.D.N.Y. Nov. 19, 2013) ("On February 21, [plaintiff] personally served the Attachment Order on [the garnishee]. . . . [The garnishee] owed debts to [defendant] when plaintiff served the Order of Attachment on February 21.  Plaintiff therefore successfully attached property belonging to [defendant] in this District.  Further, because the Court concludes below that plaintiff has adequately alleged that the other defendants are alter egos of [defendant], the presence of [defendant's] property within the District suffices to establish quasi in rem jurisdiction over them as well.").

quasi-in-rem jurisdiction appropriate in this case.  The dictates of due process are not offended by requiring [defendant] to defend this claim in New York . . . .").

## CONCLUSION

For the reasons set forth above, NYKCool's default judgment motion (Dkt. No. 128) should be <u>GRANTED</u> and judgment should be entered in favor of NYKCool against Truisfruit in the amount of $8,787,157, and in addition the Court should enter a judgment directing the release of the attached funds (including those in the Court's registry) to NYKCool in partial satisfaction of NYKCool's judgment.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  <u>See also</u> Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 2240, and to my chambers, 500 Pearl Street, Room 1370.  Any requests for an extension of time for filing objections must be directed to Judge Kaplan (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas</u> v. <u>Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985); <u>Ingram</u> v. <u>Herrick</u>, 475 F. App'x 793, 793 (2d Cir. 2012); <u>IUE AFL-CIO Pension Fund</u> v. <u>Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993), <u>cert. denied</u>, 513 U.S. 822, 115 S. Ct. 86 (1994); <u>Roldan</u> v. <u>Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Frank</u> v. <u>Johnson</u>, 968 F.2d 298, 300 (2d Cir.), <u>cert. denied</u>, 506 U.S. 1038, 113 S. Ct. 825 (1992); <u>Small</u> v. <u>Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989); <u>Wesolek</u> v. <u>Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988); <u>McCarthy</u> v. <u>Manson</u>, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:          New York, New York
                December 20, 2013

                                              Respectfully submitted,

                                              _____
                                              **Andrew J. Peck**
                                              United States Magistrate Judge

Copies to:      Truisfruit S.A. (By Fed. Ex.)
                All Counsel (ECF)
                Judge Lewis A. Kaplan