UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
NYKCOOL A.B.,

        Plaintiff,

-against-                                      12-cv-5754 (LAK)

PACIFIC INTERNATIONAL SERVICES, INC., et al.,

        Defendants,

    -and-

PACIFIC FRUIT INC. and KELSO ENTERPRISES, INC.,

        Defendants-in-Interest.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

*Appearances:*

    Daniel Bruce Goldman
    Rachel Lynn Snyder
    Carla R. Walworth
    PAUL HASTINGS LLP

    *Attorneys for Defendant*

    Edward A. Keane
    Garth S. Wolfson
    MAHONEY & KEANE LLP

    *Attorneys for Plaintiff*

LEWIS A. KAPLAN, *District Judge.*

NYKCool has been struggling to collect a judgment previously entered against defendants-in-interest Pacific Fruit Inc. and Kelso Enterprises Ltd. – companies owned by defendant Alvaro Fernando Noboa Ponton ("Noboa") – for years. These attempts have been frustrated at every turn. Each time a judgment has been awarded against a new company in Noboa's organization, that company has transferred assets elsewhere, rendering itself judgment proof.

After several years of this, NYKCool moved for a default judgment in the amount of $6,956,036.17 against Noboa himself. Noboa moved to dismiss the complaint for lack of personal jurisdiction and alleged insufficiency of service of process[1] and opposed NYKCool's motion for a default judgment on the same basis. Judge Peck first denied Noboa's motion to dismiss as untimely.[2] Soon thereafter, he issued a Report and Recommendation ("R&R") recommending that the Court grant NYKCool's motion.[3] Noboa objects to the R&R, arguing principally that NYKCool did not effect adequate service of process and that the Court does not have personal jurisdiction over him. He appeals also, on similar grounds, from the denial of his motion to dismiss.

*Background*

I.  *Sufficiency of Service of Process*

   A.  *Facts*

NYKCool filed a complaint against Noboa and several companies that he is alleged to own on July 26, 2012, seeking to pierce the corporate veil and collect from them the judgment

---

[1]  DI 171, 174, at 8-12.

[2]  DI 178.

[3]  DI 179.

that this Court previously had entered against Pacific and Kelso.[4]  In a hearing before Judge Peck on October 2, 2012, NYKCool expressed doubt about its ability to serve Noboa, explaining that "[w]e don't really have his address, but we are told that it would be difficult to serve him personally."[5]  Neither NYKCool nor the defense counsel raised the fact that the complaint alleges that NYKCool's president negotiated contracts at Noboa's residence, which presumably means that he knows or knew the address.[6]  In any event, NYKCool requested permission to serve Noboa "via email or the Internet to his personal presidential Web site."[7]  Judge Peck invited defense counsel – who represented certain of Noboa's companies – to seek authorization from Noboa to have someone accept service for him.  He further stated his "inclination [] to allow service via Mr. Noboa's Web site, subject to" objections in the event no such authorization could be obtained.[8]

On October 12, 2012, NYKCool sent copies of the summons and complaint by e-mail to direccion@cruzadanuevahumanidad.org.  An affidavit of service stated that this constituted service on Noboa because this was the e-mail address set forth in the "Contact Us" section of the website for Noboa's humanitarian organization, Cruzada Nueva Humanidad, to which the "Contact

---

[4] 10 Civ. 3867, DI 47.

[5] Oct. 2, 2012 Tr. [DI 29] at 2:13-14.

[6] Compl. ¶ 3 ("The underlying contract of affreightment was negotiated solely by Noboa with the President of NYKCool over the course of several days at Noboa's residence in Ecuador.").

[7] DI 29 at 2:32-3:5.

[8] *Id.* at 3:20-4:6.

3

Us" section of his website, www.alvaronoboa.org, directs correspondence.[9] The director of the Fundación Cruzada Nueva Humanidad wrote to the Court and stated that the Foundation had not received any legal documents and that its website has a disclaimer which states that it "is not authorized to accept communications, message[s], or other information, and any such communications, message[s], or other information provided to the website are not monitored by or forwarded to any person."[10]

NYKCool subsequently amended the complaint to add Truisfruit, S.A., another Noboa company, as a defendant. Judge Peck ordered that service be made on Truisfruit at El Oro 101 Interseccion Vivero – 5 Junio, Guayaquil, Ecuador.[11] On October 25, 2013 the Clerk of Court certified that the amended complaint had been served on Noboa, as well, by Federal Express to "El Oro Interseccion Vivero – 5 de Junio, Guayaquil, Ecuador."[12] According to the Federal Express tracking number, the package never was delivered.[13]

B.   *The R&R*

The R&R recommends finding that service by e-mail was permissible and adequate

---

[9] DI 116.

[10] DI 210, Ex. A. Dr. Jenny Arteaga, the Foundation's director, submitted a declaration in which she affirmed that Exhibit A is a letter that she sent to the Court in December 2012. The letter itself, in which she denies that the Foundation received the summons and complaint, is not a sworn statement.

[11] DI 114 at 5.

[12] DI 121.

[13] R&R [DI 199] at 17.

4

under Federal Rule of Civil Procedure 4(f)(3), which allows the court to order service on a foreign individual "by other means not prohibited by international agreement." The R&R reasons that "under the circumstances presented here – *i.e.*, years of litigation resulting form NYKCool's efforts to enforce a judgment that Noboa and his companies have made every effort to avoid and where NYKCool had no residence address for Noboa – service on the e-mail address to which users are directed from Noboa's website, pursuant to this Court's October 2, 2012 Order, was sufficient service under Rule 4(f)(3) and was reasonably calculated to apprise Noboa of the lawsuit and give him an opportunity to respond."[14]

The R&R recommends finding that service of the amended complaint was insufficient, however. Although Rule 4(f)(2)(C)(ii) allows service on an individual in a foreign country "using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt,"[15] the address on the Federal Express label did not match the address in the Court's order regarding service on Truisfruit. There is no indication, from the Federal Express tracking number or otherwise, that Noboa ever received the amended complaint.

### C. Noboa's Objections

Noboa objects to the R&R's recommendation that the Court find that service of process was adequate. He argues that the record does not demonstrate sufficiently that NYKCool could not effect service by some other means. Specifically, Noboa points to the facts that NYKCool did not explain why (1) it would be difficult to find his address or serve him personally and (2)

---

[14] *Id.* at 14-15.

[15] FED. R. CIV. P. 4(f)(2)(C)(ii).

5

NYKCool could not serve him at the residence at which its president and Noboa allegedly met in person. He relies also on the disclaimer on the Fundación Cruzada Nueva Humanidad's website and letter from its director in claiming that service by e-mail to the Foundation's contact address was not reasonably calculated to provide him with notice.

## II.   Personal Jurisdiction

### A.   Allegations

The complaint and amended complaint both allege that Noboa "controls the defendant and defendants in interest corporations and others as 'sham' and 'alter ego' companies in the business of the growing, transportation and sale of fresh fruit. He has stated in a web site in his name that he has, through the acquisition of the control of his father's businesses, taken 'control over the world's fourth largest banana business.'"[16] In the underlying arbitration action, defendant companies Kelso and Pacific Fruit filed a counterclaim for funds that allegedly were intended to go directly to Noboa.[17] Everyone at the companies "report[ed] to Alvaro Noboa . . . indirectly."[18]

Pacific Fruit and several of Noboa's other companies are alleged to be "organized and existing pursuant to the laws of the State of New York" and they have not contested the exercise

---

[16]   Compl. ¶ 22.

[17]   *Id.* ¶ 23 ("Pacific Fruit's witness testified: 'Q: What did Mr. Noboa want the $2.3 million credit to be applied? A. He just wanted – he actually just wanted a check for 2.3 million. Q. To his – to him? A. To him. I mean, I'm sure he would have worked out something where it was a credit to have something, but he's – you know, I want my check.'").

[18]   *Id.*

6

of general jurisdiction.[19]  NYKCool argues that these allegations are sufficient to find that there is general jurisdiction over Noboa due to his status as his companies' alter ego.

### B.     *The R&R*

The R&R recommends finding that there is jurisdiction over Noboa because he is alleged adequately to be an alter ego of his companies, which are subject to general jurisdiction in New York.  It notes that NYKCool alleges that "Noboa owns and controls the defendant companies, [and] that money was, and is, routinely funneled throughout all of the defendant companies at Noboa's whim."[20]

### C.     *Noboa's Objections*

Noboa objects to the R&R's recommendation that the Court find that it has personal jurisdiction over him.  He argues that the allegations in the complaint are insufficient to support a finding of general jurisdiction based on an alter ego theory and that such jurisdiction may not be constitutional in light of the Supreme Court's recent decision in *Daimler AG v. Bauman*.[21]

Finally, Noboa makes an entirely conclusory argument that the Court does not have subject matter jurisdiction because there is no alter ego jurisdiction over him.

---

[19]  *Id.* ¶¶ 14-15, 28, (Pacific International, Inc., Pan American Trading Company, Inc., and Pacific Fruit all are alleged to be organized under New York law).

[20]  DI 199 at 19.

[21]  134 S. Ct. 746 (2014).

7

*Discussion*

I.   *Sufficiency of Service of Process*

The Court is not insensitive to the considerable inconvenience and expense that NYKCool undoubtedly has incurred in attempting to enforce the judgment against the defendants. But it is not persuaded that NYKCool's attempt to serve Noboa by e-mail was sufficient under Rule 4(f) and the Due Process Clause.[22] Service to the "Contact Us" e-mail address on a humanitarian website linked to Noboa and his personal website cannot be said to have been reasonably calculated to provide him with notice.

Rule 4(f), which governs service of an individual in a foreign country, provides that service is proper in the following circumstances:

> "(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> "(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>> "(A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>>
>> "(B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>>
>> "(C) unless prohibited by the foreign country's law, by:
>>
>>> "(i) delivering a copy of the summons and of the complaint to the individual personally; or
>>>
>>> "(ii) using any form of mail that the clerk addresses and sends to the

---

[22] Actual notice of the lawsuit is not sufficient. *Martin v. New York State Dept. of Mental Hygiene*, 588 F.2d 371, 373 (2d Cir. 1978).

individual and that requires a signed receipt; or

"(3) by other means not prohibited by international agreement, as the court orders."[23]

As an initial matter, it is not necessary to exhaust or demonstrate the impossibility of service under Rules 4(f)(1)-(2) before resorting to service under Rule 4(f)(3).[24]  Courts in this district generally consider the feasibility of service under Rules 4(f)(1)-(2) in determining whether to grant an order under Rule 4(f)(3), however.[25]  NYKCool's failure to explain why service under Rule 4(f)(1)-(2) was not feasible is not a fatal defect, although it might have been a fact to consider in deciding whether to order service by an alternate means.

Service by e-mail is appropriate under Rule 4(f)(3) in some circumstances.  In evaluating whether a particular method of service is sufficient, "the court must determine whether the alternative method is reasonably calculated, under all circumstances, to apprise interested parties

---

[23] Judge Peck's statement that it was his "inclination [] to allow service via Mr. Noboa's Web site" was not a court order for the purposes of Rule 4(f)(3).

[24] *Ehrenfeld v. Salim a Bin Mahfouz*, 04 Civ. 9641 (RCC), 2005 WL 696769, at *2 (S.D.N.Y. Mar. 23, 2005) ("'Service of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief.  It is merely one means among several which enables service of process on an international defendant.'" (quoting *Rio Props, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002))).

[25] *See, e.g.*, *Philip Morris USA Inc. v. Veles Ltd.*, 06 Civ. 2988 (GBD), 2007 WL 725412, at *3 (S.D.N.Y. Mar. 12, 2007) ("Plaintiff, when requesting permission to serve by fax and e-mail, demonstrated both the inadequacy of service on defendants by methods under Rule 4(f)(1)-(2), and the likelihood that the proposed alternative methods would succeed."); *Ehrenfeld*, 2005 WL 696769, at *2 (noting that "[p]laintiff has reasonably asserted that the Court's intervention is needed here" and describing the proffered reasons that service by conventional means would not be possible); *see also Ryan v. Brunswick Corp.*, 02 Civ. 0133 (JTE), 2002 WL 1628933, at *2 (W.D.N.Y. May 31, 2002) ("Accordingly, although a party need not exhaust all possible methods of service this Court will require parties seeking relief under FRCvP 4(f)(3) to show that they have reasonably attempted to effectuate service on the defendant(s) and that the circumstances are such that the district court's intervention is necessary to obviate the need to undertake methods of service that are unduly burdensome or that are untried but likely futile.").

9

of the pendency of the action and afford them an opportunity to present their objections."[26] As a general matter, "in those cases where service by -mail has been judicially approved, the movant supplied the Court with some facts indicating that the person to be served would be likely to receive the summons and complaint at the given email address."[27]

NYKCool has failed to show that service by e-mail to direccion@cruzadanuevahumanidad.org was reasonably calculated to reach Noboa. "Although courts have upheld service via e-mail, those cases involved e-mail addresses undisputedly connected to the defendants and that the defendants used for business purposes."[28] In contrast, there is no evidence that Noboa ever used or checked that e-mail address, for business purposes or otherwise, or that an e-mail sent to that address would have been brought to his attention.[29] There is an important distinction between e-mail addresses that are "the mechanisms by which [] defendants conduct[] business" and e-mail addresses that are "only used as an informal means of accepting requests for information rather than for receiving important business communications."[30] Many people, especially those of influence, might well have their names on websites over which they exert little

---

[26] *Philip Morris*, 2007 WL 725412, at *2.

[27] *Fortunato v. Chase Bank USA, N.A.*, 11 Civ. 6608 (JFK), 2012 WL 2086950, at *2 (S.D.N.Y. June 7, 2012).

[28] *Ehrenfeld*, 2005 WL 696769, at *3.

[29] *Id.* (finding that service by e-mail was not sufficient where there was no evidence that "[d]efendant maintains the website, monitors the e-mail address, or would be likely to receive information transmitted to the e-mail address."). In *Ehrenfeld*, as here, the plaintiff had identified a website that it believed the defendant ran and an associated e-mail address.

[30] *Id.*

or no control and which they do not monitor.

The Court therefore holds that NYKCool's attempt to serve Noboa via e-mail was not sufficient because it was not reasonably calculated to provide him with notice of the claims against him. In addition, the Court adopts the R&R's recommendation that it hold that service of the amended complaint by Federal Express to an incorrect address was not sufficient.[31]

In view of the foregoing, and bearing in mind that Noboa has actual knowledge of this lawsuit, the Court hereby orders, pursuant to Federal Rule of Civil Procedure 4(f)(3), that the plaintiff may serve the summons and amended complaint on Noboa by serving copies of those papers by e-mail on the attorneys who have appeared here on Noboa's behalf. With the understanding that such service readily is achievable, the Court goes on to address the personal jurisdiction question.

II.     *Personal Jurisdiction*

The showing that a plaintiff must make to defeat a defendant's claim that the court lacks jurisdiction over it depends on the posture of the litigation. "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith legally sufficient allegations of jurisdiction. . . . After discovery, the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant."[32] On a motion for a default

---

[31] *See, e.g., KPN B.V. v. Corcyra D.O.O.*, 08 Civ. 1549 (JGK), 2009 WL 690119, at *2 (S.D.N.Y. Mar. 16, 2009).

[32] *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) (citations omitted).

11

judgment, "although the plaintiffs retain the burden of proving personal jurisdiction, they can satisfy that burden with a prima facie showing, and may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain."[33] In the circumstances here, including especially the lack of any jurisdictional discovery, NYKCool may satisfy its burden at this stage if the facts alleged in the complaint and all inferences reasonably drawn from them make out a prima facie case of jurisdiction.[34]

    NYKCool argues that the Court has jurisdiction over Noboa because it has general jurisdiction over several of his companies, including several that are New York corporations, all of which are Noboa's alter egos. "[I]n general, 'alter egos are treated as one entity' for jurisdictional purposes."[35] In order to plead adequately that one entity is the alter ego of another for jurisdictional purposes, the plaintiff must plead that "the allegedly controlled entity 'was a shell' for the allegedly controlling party; it is not necessary to show also [for jurisdictional purposes] 'that the shell was used to commit a fraud.'"[36]

    Noboa urges the Court to conclude that jurisdiction based on an alter ego theory is

---

[33]  *SEC v. Aimsi Techs, Inc.*, 650 F. Supp. 2d 296, 301 (S.D.N.Y. 2009) (citations and quotation marks omitted).

[34]  Noboa submitted two affidavits with his motion to dismiss for lack of jurisdiction. The first is of the president of Truisfruit and the second is of an expert on comparative law. Neither is particularly relevant to the question of personal jurisdiction, which allegedly is based on Noboa's alter ego status with all of his companies – not just Truisfruit.

[35]  *Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009).

[36]  *Int'l Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.*, 475 F. Supp. 2d 456, 459 (S.D.N.Y. 2007) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).

12

impermissible in light of the Supreme Court's holding in *Daimler*.[37] The Court, at least at this stage, rejects this theory. For one thing, the Court in *Daimler* expressed some doubt about the constitutionality of subjecting a company to general jurisdiction under there mere department or agency theory, which provides jurisdiction over the principal where the subsidiary "performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services."[38] In so doing, it voiced concern that "the inquiry into importance stacks the deck, for it will always yield a pro-jurisdiction answer."[39] The Court did not express any doubt as to the soundness of an alter ego theory of jurisdiction, which is present only in the rather different circumstance in which one person or entity truly dominates another so that the two are indistinguishable for practical purposes.[40]

---

[37] *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).

Noboa asserts in a footnote that the R&R "fails to analyze alter ego jurisdiction under Ecuadorian law, as required." DI 209 at 8, n.10. As an initial matter, at least one of the companies as to which Noboa is alleged to be an alter ego (Pacific Fruit Inc.) is incorporated in New York. Moreover, the cases he cites do not support the proposition that a court must do any such thing. In *United States v. Funds Held ex rel. Wetterer*, 210 F.3d 96 (2d Cir. 2000), the court merely noted that Guatemalan corporate law – which the record addressed – was relevant to the question whether the company at issue in fact had failed to adhere to corporate formalities. It did not require that district courts consider foreign corporate law, particularly where neither party offers any indication of what that law would be and they have not complied with Rule 44.1. *See Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 440-41 (3d Cir. 1999).

[38] *Daimler*, 134 S. Ct. at 759.

[39] *Id.*

[40] *Id.*

13

The Second Circuit in *Sonera Holding B.V. v. Cukurova Holding A.S.*,[41] decided well after *Daimler*, recognized this distinction as well, remarking that jurisdiction based on an alter ego theory looks to "whether the affiliate is so dominated by the defendant as to be its alter ego," not just the "affiliate's importance to the defendant."[42]  In short, jurisdiction based on an alter ego theory applies in a far narrower set of circumstances than jurisdiction based on an agency theory.  While further briefing, analysis, and additional facts conceivably might lead to a different conclusion, the Court is not now prepared to foreclose the exercise of personal jurisdiction over Noboa in this case.

Noboa objects also on the basis that NYKCool has not alleged adequate facts to make out a prima facie case that Noboa and his companies are alter egos.  The Court disagrees and overrules Noboa's objections in this point.  It adopts the R&R's recommended finding that "[i]n the context of a default, NYKCool's allegations, including that Noboa owns and controls the defendant companies, that money was, and is, routinely funneled throughout all of the defendant companies at Noboa's whim, and that the defendant companies are not entitled to be treated as legal entities separate from Noboa, are sufficient to establish that Noboa and the defendant companies are alter egos."[43]

*Conclusion*

For the foregoing reasons, Noboa's objections to the R&R are sustained to the extent that the Court concludes that service of process on Noboa was insufficient and overruled in all other

---

[41] 750 F.3d 221 (2d Cir. 2014).

[42] *Id.* at 225.

[43] DI 199 at 19.

14

respects. The motion for a default judgment [DI 157] is denied without prejudice to a new motion in the event NYKCool serves Noboa and Noboa defaults.[44] Noboa's motion for leave to file a reply brief [DI 207] is granted. Noboa's motion to dismiss the amended complaint [DI 171] is granted to the extent that the purported service on Noboa to date is quashed as insufficient, without prejudice to renewed efforts to serve him including by means provided for herein, and denied in all other respects.

SO ORDERED.

Dated: July 15, 2014

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[44] The fact that service of process is quashed eliminates any default by Noboa to date. Assuming he is served, he may litigate the personal jurisdiction motion on its merits.