UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NYKCOOL A.B.,

                Plaintiff,

      -against-                              12-cv-5754 (LAK)

PACIFIC INTERNATIONAL SERVICES, INC., et al.,

                Defendants,

      -and-

PACIFIC FRUIT INC. and KELSO ENTERPRISES, INC.,

                Defendants-in-Interest.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

      Appearances:

                Edward A. Keane
                Garth S. Wolfson
                MAHONEY & KEANE, LLP
                *Attorneys for Plaintiff*

                Daniel B. Goldman
                Carla R. Walworth
                Rachel L. Snyder
                PAUL HASTINGS LLP
                *Attorneys for Alvaro Noboa*

LEWIS A. KAPLAN, *District Judge.*

        NYKCool has been struggling for years to collect a judgment previously entered

against defendants-in-interest Pacific Fruit Inc. ("Pacific") and Kelso Enterprises Ltd. ("Kelso") –

companies owned by defendant Alvaro Fernando Noboa Ponton ("Noboa"). These attempts have been frustrated at every turn. Each time a judgment has been awarded against a new company in Noboa's organization, that company has transferred assets elsewhere, rendering itself judgment proof. After several years of this, NYKCool moved for a default judgment in the amount of $6,956,036.17 against Noboa himself. This Court quashed NYKCool's first effort to serve Noboa but authorized service by another means. The matter now is before the Court on Noboa's objections to an order by Magistrate Judge Andrew J. Peck, which denied Noboa's motion to dismiss for insufficiency of the specific service of process authorized by this Court and lack of personal jurisdiction.

*Facts*

*This Action*

Some years ago, NYKCool obtained an arbitration award against Pacific and Kelso in the amount of $8,787,157, of which more than $6 million remains unsatisfied. It brought this action in 2012 against a number of corporate defendants including South Pacific Shipping Co. Ltd. ("SOPAC") and three individuals. It seeks to pierce the corporate veil in order to collect the arbitration award from any of the defendants having assets with which to satisfy it.

In a ruling upheld by the Court of Appeals, this Court granted summary judgment in favor of plaintiff and against each of the corporate defendants other than SOPAC, determining that each was an *alter ego* of the other and therefore liable for payment of the arbitration award.[1]

---

[1] *See NYKCool A.B. v. Ecuadorian Line, Inc.*, 562 F. App'x 45 (2d Cir. 2014); DI 69, 73.

3

The action remains pending against the individual defendants[2] and SOPAC.

*NYKCool's Unsuccessful Attempt to Serve Noboa, the Order for Service, and the Second Service*

In a hearing before Magistrate Judge Peck on October 2, 2012, NYKCool expressed doubt about its ability to serve Noboa, explaining that "[w]e don't really have his address, but we are told that it would be difficult to serve him personally."[3]  Neither NYKCool nor defense counsel raised the fact that the complaint alleges that NYKCool's president once negotiated contracts at Noboa's then-residence, which presumably means that he knows or knew the address.[4]  In any event, NYKCool requested permission to serve Noboa "via e-mail or the Internet to his personal presidential Web site."[5]  Judge Peck invited defense counsel – who represented certain of Noboa's companies – to seek authorization from Noboa to have someone accept service for him.  Judge Peck further stated his "inclination . . . to allow service via Mr. Noboa's Web site, subject to" objections in the event no such authorization could be obtained.[6]

---

[2]     It remains pending at least against Messrs. Noboa, Hickey, and Aguirre.  While the other two individuals, Messrs. Ahlstrom and Kissinger, have appeared by counsel, and the docket sheet does not readily show a disposition as to them, counsel appear in recent filings as treating them as no longer being in the case.  Nothing turns on this for present purposes.

[3]      Oct. 2, 2012 Tr. [DI 29] at 2:13–14.

[4]     Compl. ¶ 3 ("The underlying contract of affreightment was negotiated solely by Noboa with the President of NYKCool over the course of several days at Noboa's residence in Ecuador.").

[5]     DI 29 at 2:23–3:5.

[6]     *Id.* at 3:20–4:6.

4

On October 12, 2012, NYKCool sent copies of the summons and complaint by email to direccion@cruzadanuevahumanidad.org.[7]  An affidavit of service stated that this constituted service on Noboa because this was the email address listed in the "Contact Us" section of the website for Noboa's humanitarian organization, Cruzada Nueva Humanidad, to which the "Contact Us" section of his website, www.alvaronoboa.org, directs correspondence.[8]  The director of the Fundación Cruzada Nueva Humanidad wrote to the Court and stated that the Foundation had not received any legal documents and that its website has a disclaimer which states that it "is not authorized to accept communications, message[s] or other information, and any such communications, message[s] or other information provided to the website are not monitored by or forwarded to any person."[9]  In the last analysis, this Court granted Noboa's motion to quash that service on the ground that the method selected had not been reasonably calculated to reach Noboa.[10]  It went on, however, to invoke Federal Rule of Civil Procedure 4(f)(3) and, "bearing in mind that Noboa has actual knowledge of this lawsuit," ruled "that the plaintiff may serve the summons and amended complaint on Noboa by serving copies of those papers by e-mail on the attorneys who have appeared here on Noboa's behalf."[11]

---

[7]      *See* Aff. of Service [DI 116].

[8]      *See id.*

[9]      Letter from Jenny Arteaga to Garth S. Wolfson & the Court (December 2002) [DI 210], Ex. A.

[10]      *NYKCool A.B. v. Pac. Int'l Servs., Inc.*, __ F. Supp. 2d __, No. 12-cv-5754, 2014 WL 3605632, at *4 (S.D.N.Y. July 15, 2014).

[11]      *Id.*

On July 17, 2014, NYKCool served Noboa as authorized by the Court's order.[12]

Noboa made his displeasure plain.  On July 25, 2014, the following advertisement appeared in The New York Times:

# TO WHOM IT MAY CONCERN

**I, Alvaro Noboa, inform that I have not hired or authorized this and last year or any other year any person or lawyer to be served by the court in my name.**

**I ratify that I am an Ecuadorian citizen therefore my jurisdiction is Ecuador.  I do not have any other country including The United States of America.**

**I declare that any authority, person or entity has not personally and properly served me in The United States of America during the last ten years up to date.**

**I also have not been served, nor authorized anyone to be served in my name via email, website, Twitter, Facebook, social networks, newspapers, etc. or any other means in Ecuador, in the USA or in any other country. I only accept to be served if it is done personally (and you have to consider the jurisdiction), it would have to be done by looking me at the eyes, asking my name and giving me the service in my hands.**

**Sincerely,**

**/s/**
**Alvaro Noboa**

---

[12]  *See* Aff. of Service [DI 229].

Perhaps not surprisingly, this advertisement drew some media attention.[13]

*The Order Now At Issue*

On August 7, 2014, Noboa again moved to dismiss for alleged insufficiency of service of process and for lack of personal jurisdiction.[14]  In fact, however, the motion focused almost entirely on the claims that the Court's designation, pursuant to Rule 4(f)(3), of one of Noboa's counsel to receive service on his behalf was improper and, in any case, violated Noboa's right to due process of law.[15]

Magistrate Judge Peck denied the motion the next day by memorandum endorsement:

"As Noboa's brief acknowledges, Judge Kaplan 'has already ordered service in this manner.' (Docket No. 235: Noboa Br. At 3.) As a Magistrate [J]udge, I cannot reverse what Judge Kaplan has already done, even if I were inclined to do so (which I am not).  The parade of horribles that Noboa claims that Judge Kaplan's prior decision will lead to, that is, that service on an attorney who appears to challenge service would result in an automatic waiver of objection to service, is overstated, to say the least. Judge Kaplan specifically allowed service on Noboa's counsel pursuant to Federal Rule of Civil Procedure 4(f) because of plaintiff's difficulty in serving Noboa, who clearly was fully aware of this and the related litigations against companies he controls and which have evaded a prior judgment against them in favor of the plaintiff. Without such a 4(f) order, which is not likely to be entered in the more run-of-the-mill case, service on an attorney who appears for the purpose of challenging jurisdiction would not confer jurisdiction. This is not such a run-of-the-

---

[13]    *See* James C. McKinley Jr., *Behind a Mysterious Advertisement, an Ecuadorean Banana Mogul's Legal Battle*, N.Y. TIMES, Aug. 6, 2014, at A18, *available at* http://www.nytimes.com/2014/08/06/nyregion/behind-a-mysterious-ad-an-ecuadorean-banana-moguls-legal-battle.html.

[14]    Mot. to Dismiss Under Fed. R. Civ. P. 12(b)(2), (5) [DI 234].  The motion was filed by one of the Paul Hastings attorneys whom the Court had authorized to be served on Noboa's behalf.

[15]    *See id.*

mill case, and Judge Kaplan did enter such an order. Noboa's motion is DENIED."[16] Noboa objects to Magistrate Judge Peck's order.

## *Discussion*

For all of the storm and fury, this is a very simple motion.  Magistrate Judge Peck clearly was right in ruling as he did because this Court's prior authorization of service in the manner employed was beyond his authority to disturb.  In substance, Noboa was asking him to overrule this Court, which he could not have done even if so inclined.  And that could be the end of the matter. Nevertheless, Noboa's motion in substance seeks reconsideration of this Court's earlier order.  As the Court could alter that order if persuaded that it was issued in error, it will address Noboa's motion on its substantive merits.

The motion presents two questions.  The first is whether this Court had the power under Rule 4(f)(3) to order service on Noboa by directing NYKCool to email the papers to the lawyers Noboa retained to appear on his behalf to move (successfully, as it happened) to quash NYKCool's first attempt to serve him.  Assuming the Court was so empowered, the second question is whether service as authorized by the Court under Rule 4(f)(3) violated Noboa's right to due process of law.

*Rule 4(f)(3) Empowered the Court to Permit Service in the Manner Used to Effect It*

Rule 4(f), which governs service of an individual in a foreign country, provides that service is proper in the following circumstances:

---

[16]    DI 236.

"(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

"(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

>"(A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

>"(B) as the foreign authority directs in response to a letter rogatory or letter of request; or

>"(C) unless prohibited by the foreign country's law, by:

>>"(i) delivering a copy of the summons and of the complaint to the individual personally; or

>>"(ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

"(3) by other means not prohibited by international agreement, as the court orders."[17]

As an initial matter, it is not necessary to exhaust or demonstrate the impossibility of service under Rule 4(f)(1)-(2) before resorting to service under Rule 4(f)(3).[18] Indeed, Noboa does not claim otherwise (at least in papers filed in this Court as perhaps distinct from newspaper advertisements). Nor is there any suggestion before the Court that service in the manner authorized

---

[17] FED. R. CIV. P. 4(f). Judge Peck's statement that it was his "inclination . . . to allow service via Mr. Noboa's Web site" was not a court order for the purposes of Rule 4(f)(3).

[18] *See SEC v. Anticevic*, No. 05 Civ. 6991 (KMW), 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009) (citing *Rio Props, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002)); *Ehrenfeld v. Salim a Bin Mahfouz*, No. 04 Civ. 9641 (RCC), 2005 WL 696769, at *2 (S.D.N.Y. Mar. 23, 2005) ("'[S]ervice of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant.'" (alteration in original) (quoting *Rio Props, Inc.*, 284 F.3d at 1015)).

here – by email to attorneys who had appeared in this action on behalf of Noboa (and who still appear on his behalf in this case) – was "prohibited by international agreement."  Accordingly, the Court's order was fully compliant with Rule 4(f)(3).

Perhaps recognizing this, Noboa argues that the Court should not have authorized service by delivery to Noboa's counsel.  While he acknowledges that "service on an individual through counsel may be permissible under certain circumstances,"[19] Noboa says this was not such a case because NYKCool did not first establish that the relevant counsel "effectively serve[d] as agent for" Noboa or that they had "a long-standing relationship" with him.[20]  He contends also that the fact that these attorneys had appeared for the purpose of challenging only the prior service and personal jurisdiction bears on the propriety of permitting service on Noboa by serving them.[21]  But this argument is wide of the mark.  Indeed, it conflates the question whether Rule 4(f)(3) authorized the Court to provide for this means of service with two different questions: (1) whether service by this method was consistent with the Due Process Clause, and (2) whether and when service on an individual by service on an attorney satisfies other provisions of Rule 4.

*Due Process Considerations with Respect to the Means of Service*

In considering due process issues in this general context, it is important to recognize that two distinct considerations potentially are at play in situations such as this.  The first is that service of process must satisfy the Due Process Clause's time honored function of providing one

---

[19]     Noboa's Objections to Order [DI 238], at 2.

[20]     *Id.* at 2-3.

[21]     *See id.* at 4-5.

who is sued with notice of the proceedings so that the person sued may exercise his or her constitutionally protected right to be heard.  The second is that the relationship between the individual or entity that has been sued and the location of the forum in which the action is brought must be such as to make it fair, in all the circumstances, to subject the defendant to the burden and expense of litigating in that particular forum.[22]  Those two considerations should not be confused.

As Noboa at one point recognizes, the due process concern with respect to service of process is that "service of process, including any alternate method of service approved by the court, must be reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[23]  That is precisely right.  The service authorized by this Court fully satisfied that due process requirement.

In this case, Noboa retained the Paul Hastings firm, members of which filed notices of appearance on his behalf as early as April 28, 2014.[24]  The following month, those lawyers moved to dismiss as to Noboa for lack of personal jurisdiction.[25]  A month later, they filed papers objecting to Magistrate Judge Peck's recommendation that default judgment be entered against Noboa.[26]  The

---

[22]

     *See, e.g.*, *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987) ("The strictures of the Due Process Clause forbid a state court to exercise personal jurisdiction over Asahi under circumstances that would offend traditional notions of fair play and substantial justice." (internal quotation marks omitted)).

[23]

     DI 238 at 5 (internal quotation marks omitted) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

[24]

     DI 162-164.

[25]

     DI 171.

[26]

     DI 209.

course of the litigation from that point onward makes clear that those lawyers are in touch with him. Indeed, it is difficult to imagine evidence more clearly demonstrating both Noboa's awareness of the case and his interaction with his lawyers than the advertisements Noboa placed in *The New York Times*, though of course those facts are not essential to the result here. And that is without mention of the extensive litigation that has gone on here with companies reportedly owned by Noboa, which presumably is of great interest to him.

In all the circumstances, service on the Paul Hastings lawyers who are litigating actively on Noboa's behalf was "reasonably calculated, under all the circumstances, to apprise [him] of the pendency of the action and afford [him] an opportunity to present [his] objections."[27]

None of Noboa's arguments with respect to service on counsel in other circumstances warrants any different conclusion. For example, he relies on *In re GLG Life Tech Corp. Securities Litigation*[28] for the proposition that NYKCool was obliged to show the nature and extent of the communication between Noboa and Paul Hastings as a prerequisite to obtaining the Rule 4(f)(3) order that the Court entered.[29] But he misreads the case. *GLG* in fact made clear that "service [on GLG's counsel] comes within the scope of a court's authority under Rule 4(f)(3), since that rule requires *only* that service be '(1) directed by the court; and (2) not prohibited by international agreement.'"[30] The *GLG* court did add that "a party seeking leave to serve an individual by counsel

---

[27]

       *Mullane*, 339 U.S. at 314.

[28]

       287 F.R.D. 262 (S.D.N.Y. 2012).

[29]

       *See* DI 238 at 2.

[30]

       287 F.R.D. at 267 (emphasis added) (quoting *Rio Props., Inc.*, 284 F.3d at 1014).

must show adequate communication between the individual and the attorney,"[31] but that merely restates the governing due process consideration – that any method of service authorized under Rule 4(f)(3) be "reasonably calculated, under all the circumstances, to apprise [a defendant] of the pendency of the action and afford [the defendant] an opportunity to present . . . objections." As this Court has held, that requirement is satisfied here.

Similarly, Noboa's contention that service on counsel is inconsistent with due process unless there is proof that counsel has an agency relationship with the client is wrong in principle and immaterial in fact. It is wrong in principle because the only relevant due process requirement is that the method chosen be reasonably calculated to give the necessary notice to the client. That requirement could be satisfied, at least in some circumstances, by serving an attorney who is not an agent of the client. It could be satisfied, for that matter, by serving a carnival barker, if the relationship of the carnival barker to the defendant were such that giving the papers to the carnival barker would be reasonably likely to result in their timely transmission to the defendant.

Finally, the fact that Paul Hastings is challenging the sufficiency of service and the existence of personal jurisdiction – not, as they persist in mischaracterizing their role, making a "special" or "limited" appearance[32] – is beside the point for similar reasons. The issue of whether the Court was justified in concluding that serving Paul Hastings would be reasonably calculated to bring the lawsuit and the opportunity to defend it to Noboa's attention has no necessary relationship to the defenses asserted here on Noboa's behalf, much less to the manner in which his attorneys have

---

[31]

    *Id.*

[32]

    DI 238 at 3, 6. The Federal Rules of Civil Procedure, which were established in 1938, abolished special and limited appearances in federal practice. *See* 5B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1344 (3d ed. 2014).

13

characterized their appearance.  The Court holds that it was justified in concluding that the means of service authorized were reasonably calculated to give Noboa the necessary notice.  And while it makes no difference to the outcome of this dispute, the Court notes that the authorized means in fact accomplished their goal.

*Conclusion*

For the foregoing reasons, the objections of defendant Alvaro Fernando Noboa Ponton [DI 238] to Magistrate Judge Andrew J. Peck's order of August 8, 2014 are overruled. Treating the objections as a motion for reconsideration of this Court's memorandum opinion of July 15, 2014, the motion is granted to the extent that the Court has reconsidered its decision. Nonetheless, the Court adheres to its original result.  The Court again holds that the service of process was sufficient.[33]

SO ORDERED.

Dated:        March 5, 2015

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

_____

[33]    Noboa's papers advert to his previous assertions that the Court lacks personal jurisdiction over him and states that he interprets the Court's July 15, 2014 Memorandum Opinion and Magistrate Judge Peck's August 8, 2014 order as having rejected those assertions.  DI 238 at 7-8.  The Court notes that it already has held that the allegations of the amended complaint are sufficient to make out a basis for the assertion of personal jurisdiction over Noboa, at least on an *alter ego* theory, which is all that is required given the procedural posture of the case.  *NYKCool A.B.*, 2014 WL 3605632, at *6.